**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Charles C. WATERS, Defendant–Appellant.**

No. 97–5513.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 6, 1998.

Decided Sept. 28, 1998.

David Bunning (argued and briefed), Office of the U.S. Attorney, Covington, KY, for Plaintiff–Appellee.

Thomas M. Dawson (briefed), David V. Ayres (argued and briefed), Leavenworth, KS, for Defendant–Appellant.

Before: MERRITT, KENNEDY, and GILMAN, Circuit Judges.

## OPINION

MERRITT, Circuit Judge.

In this criminal case, Charles Waters appeals the revocation of his term of supervised release. Waters contends that the revocation proceedings were invalid because the District Court improperly allowed a magistrate judge to conduct the final hearing. Waters also argues that the Magistrate Judge erred by considering hearsay evidence during the hearing and that the District Court erred by sentencing him *in absentia* following revocation. We conclude that the controlling statute authorizes magistrate judges to conduct final revocation-of-supervised-release hearings subject to *de novo* review by a district judge. We also conclude that the Magistrate Judge properly considered the corroborated out-of-court statement of Waters's alleged co-conspirator. Nevertheless, we hold that the District Court failed to carry out the required *de novo* review when he adopted Magistrate Judge's report and recommendation without taking into account the fact that Waters's alleged co-conspirator was no longer unavailable to testify. We also hold that the District Court erred by sentencing Waters for violating the terms of his supervised release without allowing him to be present. Accordingly, we vacate the District Court's order revoking Waters's term of supervised release, and we remand the case for further proceedings.

## I.

In August 1991, a jury convicted Waters of various offenses relating to the possession and distribution of marijuana, and the District Court sentenced him to 120 months in prison followed by an eight year term of supervised release. This Court affirmed the conviction and sentence in 1992. *United States v. Waters*, No. 91–6450, 978 F.2d 1260, 1992 WL 322367, (6th Cir. Nov.5, 1992). In April 1994, Waters filed a motion to vacate his conviction and sentence under 28 U.S.C. § 2255, alleging ineffective assistance of trial counsel. After an evidentiary hearing on the motion, Waters and the United States Attorney signed an agreed order setting aside the conviction and sentence and allowing Waters to enter a plea of guilty to one count of using a communication facility in connection with the sale of marijuana. The plea agreement provided that Waters faced a prison term of up to eight years followed by a maximum supervised release term of three years. Following Waters's plea, the District Court sentenced him to sixty-three months in prison followed by a supervised release term of three years.

Waters was released from prison in August 1995 and began to serve his term of supervised release. In May 1996, Waters's probation officer filed a Probation Violator Summons stating that Waters had violated the terms of his supervised release by traveling outside the district, associating with a known felon, and engaging in a conspiracy to sell marijuana. At a hearing before the United States Magistrate Judge, the government offered the written hearsay statement of Waters's alleged co-conspirator in the scheme to sell marijuana, Robert Alexander, who was not available to testify because he was a fugitive at the time of the hearing. Alexander's probation officer testified that Alexander was not in custody at the time he made the statement and that he was not coerced or offered anything in return for making the statement.

According to Alexander's statement, Waters contacted him to propose a drug deal, and he agreed. Waters flew to Orlando on April 13, 1996, to discuss the deal. After Alexander picked him up at the airport, they drove to a Holiday Inn in Melbourne Beach, where Waters showed Alexander a sample of the marijuana they would attempt to sell. Waters flew back to his home in Chicago the following day. Alexander then contacted a potential buyer in Jamaica, New York, who agreed to buy forty pounds of marijuana. According to Alexander, Waters then arranged to have the drugs sent to New York. Alexander met Waters again on April 20, at a Hilton Hotel in Manhattan, where Waters delivered to him "suitcases full of marijuana." After the deal with the buyer in Jamaica fell through because they could not agree on a price, Alexander claims he agreed to rent a car, drive the marijuana back to Chicago, and deliver it to Waters. Alexander was caught with the drugs in Pennsylvania and agreed to cooperate with the police in an attempt to make a controlled delivery to Waters in Chicago. The delivery attempt failed.

The government offered other evidence, including hotel records from Florida and New York, to corroborate Alexander's story. Waters objected to Alexander's statement and the hotel records on the ground that their admission would violate Rule 32.1(a)(2)(D) of the Federal Rules of Criminal Procedure, which provides that a "person shall be given ... the opportunity to question adverse witnesses" at the revocation hearing. The Magistrate Judge overruled the objection, concluding that the government had established good cause for not calling Alexander or the custodians of the hotel records to testify and that the contested hearsay evidence was sufficiently corroborated by other reliable evidence for him to consider it. Based on this and other corroborating evidence, the Magistrate Judge decided that the government had established by a preponderance of the evidence that Waters conspired to distribute marijuana, associated with known felon Alexander, and traveled to New York and Florida without the permission of his probation officer. The Magistrate Judge recommended that Waters be sentenced to twenty-four months in prison

for his violations. Two months later, the District Court adopted these conclusions over Waters's objections and sentenced him without a hearing.

## II.

Waters contends that the revocation proceedings were invalid because the Magistrate Judge lacked the statutory authority to conduct his final revocation hearing. The government argues that Waters has waived this claim by failing to challenge the Magistrate Judge's authority before filing his objections to the report and recommendation. See Hill v. Duriron Co., 656 F.2d 1208, 1213 (6th Cir.1981) ("Ordinarily a party who objects to a reference to a magistrate must make his objections known either at the time of reference or soon thereafter."); see also Marshall v. Chater, 75 F.3d 1421, 1426–27 (10th Cir.1996) (collecting cases holding that issues raised for first time in objections to magistrate judge's report and recommendation are deemed waived). Waters has offered no explanation for his failure to assert this claim prior to the hearing before the Magistrate Judge.

Notwithstanding this apparent waiver, we find Waters's claim regarding the Magistrate Judge's authority to be without merit. Although we have yet to address this question, at least one circuit has implicitly rejected Waters's claim by assuming that magistrate judges possess the authority to conduct the final revocation hearing in a felony case. See United States v. Rodriguez, 23 F.3d 919, 920 & n. 1 (5th Cir.1994) (underlying offense was theft of government-owned van in violation of 18 U.S.C. § 641, which at the time of his conviction made theft of public property worth at least $100 a felony). The relevant statute, 18 U.S.C. § 3401(i), reads as follows:

Misdemeanors; application of probation laws—

. . .

(i) A district judge may designate a magistrate judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the judge proposed findings of fact and recommendations for such modifica-

tion, revocation, or termination by the judge, including, in the case of revocation, a recommended disposition under section 3583(e) of this title. The magistrate judge shall file his or her proposed findings and recommendations.

Waters argues that § 3401(i) does not apply in his case because the term "misdemeanor" in the statute's title limits the application of all subsections to misdemeanor cases. We reject this reading of the statute based on the language and structure of the provision, and on its legislative history. *See Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.,* 331 U.S. 519, 528–29, 67 S.Ct. 1387, 91 L.Ed. 1646 (1947) (although "the title of a statute and the heading of a section" are "tools available for the resolution of a doubt" about the meaning of a statute, they "cannot undo or limit that which the text makes plain"). At the outset, we note that Waters's argument regarding the title of the statute is weakened by the semicolon in the title between the term "misdemeanors" and the words "application of probation laws," which

strongly suggests that the statute addresses the authority of magistrate judges in separate areas rather than in the single area of "application of probation laws in misdemeanor cases." The language of subsection (i) supports the conclusion that it is intended to apply in both felony and misdemeanor cases. Subsection (i), unlike other portions of the statute, contains no limitation—either explicitly or by reference—to misdemeanor cases. In fact, it explicitly allows a magistrate to make a recommended disposition under 18 U.S.C. § 3583(e), which, in turn, provides the procedures for the modification and revocation of supervised release in both misdemeanor and felony cases. The statute's overall structure supports this conclusion. While subsections (a) through (g) address the authority of magistrates to conduct trials and probation hearings in certain misdemeanor cases, subsections (h) and (i), added to the statute in 1992, refer to the power of magistrate judges to conduct supervised release hearings. Federal Courts Admin. Act § 103, Pub.L. 102–572, 106 Stat. 4507 (1992).[1]

1. As amended, 18 U.S.C. § 3401 reads as follows:

Misdemeanors; application of probation laws

(a) When specially designated to exercise such jurisdiction by the district court or courts he serves, any United States magistrate shall have jurisdiction to try persons accused of, and sentence persons convicted of, misdemeanors committed within that judicial district.

(b) Any person charged with a misdemeanor, other than a petty offense that is a class B misdemeanor charging a motor vehicle offense, a class C misdemeanor, or an infraction, may elect, however, to be tried before a district judge for the district in which the offense was committed. The magistrate judge shall carefully explain to the defendant that he has a right to trial, judgment, and sentencing by a district judge and that he may have a right to trial by jury before a district judge or magistrate judge. The magistrate judge may not proceed to try the case unless the defendant, after such explanation, expressly consents to be tried before the magistrate judge and expressly and specifically waives trial, judgment, and sentencing by a district judge. Any such consent and waiver shall be made in writing or orally on the record.

(c) A magistrate who exercises trial jurisdiction under this section, and before whom a person is convicted or pleads either guilty or nolo contendere, may, with the approval of a judge of the district court, direct the probation service of the court to conduct a presentence investigation on that person and render a re-

port to the magistrate prior to the imposition of sentence.

(d) The probation laws shall be applicable to persons tried by a magistrate under this section, and such officer shall have power to grant probation and to revoke, modify, or reinstate the probation of any person granted probation by a magistrate judge.

(e) Proceedings before United States magistrates under this section shall be taken down by a court reporter or recorded by suitable sound recording equipment. For purposes of appeal a copy of the record of such proceedings shall be made available at the expense of the United States to a person who makes affidavit that he is unable to pay or give security therefor, and the expense of such copy shall be paid by the Director of the Administrative Office of the United States Courts.

(f) The district court may order that proceedings in any misdemeanor case be conducted before a district judge rather than a United States magistrate upon the court's own motion or, for good cause shown, upon petition by the attorney for the Government. Such petition should note the novelty, importance, or complexity of the case, or other pertinent factors, and be filed in accordance with regulations promulgated by the Attorney General.

(g) The magistrate judge may, in a petty offense case involving a juvenile, that is a class B misdemeanor charging a motor vehicle offense, a class C misdemeanor, or an infraction, exercise all powers granted to the district court

The legislative history accompanying the 1992 amendment demonstrates that Congress added subsections (h) and (i) to broaden the authority of magistrate judges to conduct revocation proceedings.

Magistrate judges have routinely conducted both preliminary and final probation proceedings under authority of 28 U.S.C. § 636(b)(3). Two circuits, however, have held that Congress did not intend to permit the assignment of final probation revocation functions to magistrate judges. This section specifically authorizes a magistrate judge to conduct both the preliminary and final revocation of supervised release hearings. It contemplates that if a court delegates a final revocation of supervised release hearing to a magistrate judge, the magistrate judge will prepare proposed findings of fact and recommendations as provided in 28 U.S.C. § 636(b)(1)(B), thereby following procedures similar to those used in final probation revocation. The district judge may make a *de novo* determination and act on the proposed findings of fact and recommendations as provided in 28 U.S.C. § 636(b)(1).

H.R. Rep. 102–1006, at 18 (1992), *reprinted in* 1992 U.S.C.C.A.N. 3921, 3927–28. Like subsection (i) itself, the Committee Report makes no explicit distinction between misdemeanors or felonies. The language and tone of the report—which criticizes the narrow readings of § 3401 and 28 U.S.C. § 636 made by some courts—supports our conclusion that § 3401(i) applies in felony cases.

■ In rejecting Waters's argument regarding the word "misdemeanor" in the statute's title, we note that limiting the applica-tion of subsection (i) to misdemeanor cases based on the title alone would be particularly inappropriate in this case, since Congress did not amend the statute's title to reflect the addition of the new subsections dealing with supervised release in 1992. Indeed, if Waters's reasoning were to prevail and the title were to determine the scope of the provision, the absence of any explicit reference to "supervised release" would arguably render subsections (h) and (i) impotent. In light of the semicolon in the title, and given the rule that a statute's title may not undo that which the statute itself makes plain, we decline to adopt Waters's cramped interpretation of the statute. Rather, we conclude—based on the language and structure of the statute as well as the legislative history accompanying the 1992 amendment—that magistrate judges may conduct final revocation hearings in felony cases, subject to *de novo* review by the district judge.

■ Waters contends that even if § 3401(i) allows magistrate judges to conduct final hearings regarding the revocation of supervised release, they may do so only with the defendant's express prior consent. Since he never gave such consent, he argues that the Magistrate Judge was not empowered to conduct the final hearing in his case. In support of this claim, Waters relies on *United States v. Colacurcio*, 84 F.3d 326 (9th Cir.1996), in which the Ninth Circuit held that a magistrate judge did not possess the authority to conduct a probation revocation hearing pursuant to 18 U.S.C. § 3401(d) without the prior express consent of the defendant. In *Colacurcio* the court concluded that the consent requirement contained in § 3401(b)—which forbids a magistrate judge

under chapter 403 of this title. The magistrate judge may, in any other class B or C misdemeanor case involving a juvenile in which consent to trial before a magistrate judge has been filed under subsection (b), exercise all powers granted to the district court under chapter 403 of this title. For purposes of this subsection, proceedings under chapter 403 of this title may be instituted against a juvenile by a violation notice or complaint, except that no such case may proceed unless the certification referred to in section 5032 of this title has been filed in open court at the arraignment. No term of imprisonment shall be imposed by the magistrate in any such case.

(h) The magistrate judge shall have power to modify, revoke, or terminate supervised release of any person sentenced to a term of supervised release by a magistrate judge.

(i) A district judge may designate a magistrate judge to conduct hearings to modify, revoke, or terminate supervised release, including evidentiary hearings, and to submit to the judge proposed findings of fact and recommendations for such modification, revocation, or termination by the judge, including, in the case of revocation, a recommended disposition under section 3583(e) of this title. The magistrate judge shall file his or her proposed findings and recommendations.

from conducting the trial in a misdemeanor case "unless the defendant ... expressly consents to be tried before the magistrate judge"—applies with respect to probation hearings conducted under subsection (d) of the statute. *Id.* at 329. Although the court held that § 3401(i) was inapplicable because the case involved probation rather than supervised release, it stated in dicta that it would also read subsection (i) as incorporating subsection (b)'s consent requirement. *Id.* at 330–32.

We reject this reasoning because we see no basis for reading the § 3401(b)'s consent requirement into § 3401(i). Section 3401(b) is designed to ensure that the accused in a misdemeanor case can waive his right to trial before an Article III tribunal only after making an express and informed waiver of this right. Neither the provision nor its policy apply in Waters's situation. Waters was not a free citizen at the time of the alleged criminal activity; rather, he was a convicted felon still serving his sentence. A convict suspected of violating the terms of his supervised release does not stand in the same shoes as a person accused of committing a crime but not yet convicted. He does not enjoy the presumption of innocence, the right to have his guilt adjudicated beyond a reasonable doubt, or many of the procedural protections associated with a formal trial. Rather, he enjoys less procedural protection and may be punished upon a lesser showing of proof. In light of these distinctions, we decline to read a consent requirement into § 3401(i). Instead, we interpret the absence of an express consent requirement in subsection (i) as a deliberate choice by Congress to exclude it in light of the lesser need for such a safeguard in the context of the revocation of supervised release. *See National Truck Equip. Ass'n v. National Highway Traffic Safety Admin.,* 972 F.2d 669, 674 (6th Cir. 1992) ("In interpreting silence, we keep in mind the statutory canon *expression unius est exclusio alterius* ('the expression of one thing is to the exclusion of the other.')."). Like Congress, we are convinced that *de novo* review by an Article III judge is adequate to protect the rights of a convict accused of violating the terms of his supervised release.

## III.

Waters next argues that the Magistrate Judge erred by considering Alexander's statement and the hotel records at the final revocation hearing. He contends that Rule 32.1(a)(2)(D) of the Federal Rules of Criminal Procedure creates an absolute right to confrontation which bars the use of hearsay testimony in final revocation-of-supervised-release hearings. The rule provides that during the final revocation hearing, the defendant "shall be given ... the opportunity to question adverse witnesses." In support of his claim, Waters observes that subsection (a)(1)(C), which addresses preliminary revocation hearings, states that the defendant "shall be given ... upon request, the opportunity to question witnesses against the person unless, for good cause, the federal magistrate decides that justice does not require the appearance of the witness." He argues that the explicit inclusion of the "good cause" requirement in subsection (a)(1)(C) means that it was intentionally excluded from subsection (a)(2)(D). Therefore, Waters contends, there is no "good cause" exception to the requirement that a defendant be given the opportunity to confront adverse witnesses in the final revocation hearing.

In response, the government points to *United States v. Stephenson,* 928 F.2d 728 (6th Cir.1991), in which this Court stated that final revocation-of-supervised-release hearings "are more flexible than a criminal trial" and "[t]he judge may consider hearsay if it is proven to be reliable." *Id.* at 732. As Waters observes, however, the *Stephenson* panel did not explicitly address the language of Rule 32.1(a) and instead based its conclusion with respect to the admissibility of hearsay on *Taylor v. United States Parole Comm'n,* 734 F.2d 1152 (6th Cir.1984), a case involving parole revocation hearings, which are not subject to Rule 32.1(a). Nevertheless, the necessary implication of *Stephenson*'s statement regarding hearsay is that Rule 32.1(a)(2)(D) does not preclude the district court from considering reliable out-of-court statements in a final hearing regarding the revocation of supervised release. At least two other courts of appeals have explicitly

held that Rule 32.1(a)(2)(D) does not bar the use of reliable hearsay evidence at final hearings to revoke supervised release. *See United States v. Zentgraf,* 20 F.3d 906, 909 (8th Cir.1994); *United States v. O'Meara,* 33 F.3d 20, 20–21 (8th Cir.1994) (per curiam); *United States v. Frazier,* 26 F.3d 110, 114 (11th Cir.1994).

■ Like the Eighth and Eleventh Circuits, we now expressly hold that Rule 32.1(a)(2)(D) does not preclude the district court from considering reliable hearsay evidence in final revocation-of-supervised-release hearings. Rule 32(a)(2)(D) is essentially a codification of the minimum due process requirements established by the Supreme Court for state parole revocation in *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and for state probation revocation in *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In *Morrissey* and *Gagnon,* the Court made it clear that the procedures used for revocation of probation and parole should be "flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Morrissey,* 408 U.S. at 489, 92 S.Ct. 2593; *see also Gagnon,* 411 U.S. at 782–83 n. 5, 93 S.Ct. 1756. The Rules Committee relied explicitly on *Morrissey* and *Gagnon* in drafting Rule 32.1(a): "The hearing required by rule 32.1(a)(2) is not a formal trial; the usual rules of evidence need not be applied." Fed. R.Crim.P. 32.1 advisory committee's note (1979). This statement is consistent with Rule 1101(d)(3) of the Federal Rules of Evidence, which provides that the Rules of Evidence are inapplicable in proceedings revoking probation.

■ As Waters contends, the drafters of Rule 32.1 intentionally imposed stricter safeguards for the final revocation hearing than for the preliminary hearing:

The final hearing is a less summary one because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause. Thus, the probationer has certain rights not granted at the preliminary hearing; ... the court may not limit the opportunity to question the witnesses against him.

Fed.R.Crim.P. 32.1 advisory committee's note (1979). Nevertheless, the language of the rule must be squared with the clear intention of its drafters to adopt procedural requirements in supervised release revocation proceedings that are less stringent than those employed during adversarial criminal trials. Hearsay evidence is regularly made part of the record in criminal trials when witnesses are unavailable to testify and under circumstances showing that such evidence is reliable. There is no doubt that the framers of Rule 32.1 intended to allow the consideration of out-of-court statements under similar circumstances in final hearings regarding the revocation of supervised release. Hence, we hold that the trial court may consider reliable out-of-court statements in a final revocation hearing provided that the defendant's need for confrontation is outweighed by the government's ground for not requiring confrontation. *See Zentgraf,* 20 F.3d at 909. If Rule 32.1(a)(2)(D) creates an absolute right, it is the right to confront the witnesses who actually testify at the hearing.

**IV.**

■ Waters contends that even if Rule 32.1(a)(2)(D) does not preclude the consideration of reliable hearsay evidence in final revocation-of-supervised-release hearings, Alexander's out-of-court statement and the hotel records were not sufficiently reliable to be considered by the Magistrate Judge. With respect to the hotel records, Waters argues that Rule 32.1(a)(2)(D) required the Magistrate Judge to call the custodians of those records to appear at the hearing so that he could question them about their procedures for confirming guests' identities. He claims that this testimony would have allowed him to bolster his claim that his brother or someone else was using his identity. As the Magistrate Judge observed, both exhibits contain notations stating that they are true copies of hotel records kept in the ordinary course of business. Such records are generally considered reliable enough to overcome exclusion from evidence on hearsay grounds, *see* Fed. R.Evid. 803(6) (business records exception), and documents properly admitted under this firmly-rooted exception do not violate the

Confrontation Clause. *United States v. Hollie*, No. 93–6021, 25 F.3d 1051, 1994 WL 194164 (6th Cir. May 16, 1994); *United States v. Ismoila*, 100 F.3d 380, 392 (5th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1712, 137 L.Ed.2d 836 (1997). In any event, much of the information Waters claims he would have elicited on cross examination of the custodians—the hotels' procedures for confirming the identity of guests—is evident on the face of the records themselves. The hotel in Florida asked for the guest's name and address, and the hotel in New York requested his name and driver's license number. Calling the custodians to testify would have involved needless difficulty, delay, and expense. Under the circumstances, we hold that the Magistrate Judge acted within his discretion in considering the hotel records without requiring the government to call the custodians to testify.

█ The Magistrate Judge also concluded that Alexander's out-of-court statement was reliable and that in light of its reliability, Waters's need for confrontation did not outweigh the government's reasons for Alexander's absence. He acknowledged that Alexander's statement was crucial in tying Waters to drug activity and that, as a result, Waters's inability to cross-examine Alexander would hamper his ability to refute the evidence in the statement. The Magistrate Judge also recognized that the consequences of a finding based on the statement would be grave for Waters. On the other hand, the Magistrate Judge concluded that Alexander's fugitive status constituted a strong reason for not calling him to testify.

The Magistrate Judge noted that key portions of Alexander's statement were corroborated by other evidence. For example, Alexander claimed that Waters contacted him to propose the drug deal. To corroborate this claim, the government presented telephone records showing that fifteen calls were made from Waters's number to Alexander's residence between mid-January and mid-April 1996. Alexander claimed that he met with Waters at a hotel in Florida, where they discussed the deal on April 13 and 14, 1996. Hotel records from the Holiday Inn in Melbourne Beach Florida showed that a "Waters/Charles" checked out on April 15. The records also showed two local calls from the room to Alexander's number. Although the records showed Waters departing one day later than Alexander claimed in his statement, the court reasoned that Alexander's mistake with respect to one detail did not undercut the records' overall corroborative value. According to Alexander's statement, he arrived in New York on April 18 to meet with Waters. Records from a hotel in Floral Park, New York showed that Alexander checked in that day and that he received a call from Waters's home number on the following day. Hotel records from the Hilton in Manhattan confirmed that "Waters, Charles" arrived on April 20 and left on the following day. The driver's license number listed on the Hilton receipt matches Waters's Illinois license number. Finally, the government presented tapes of telephone conversations between Alexander and Waters that took place on April 21 and 22 in which they discussed meeting upon Alexander's arrival in Chicago. Based on this evidence, the Magistrate Judge considered Alexander's statement, with the exception of one uncorroborated portion regarding a trip Waters allegedly made to Mexico, as evidence that he violated the terms of his supervised release.

We conclude that the Magistrate Judge acted within his discretion in considering Alexander's out-of-court statement at the final revocation hearing. It would have been impossible for the government to call Alexander to testify, as he was a fugitive at the time. Although Waters demonstrated that he had a substantial interest in cross-examining Alexander about the details of his statement, the Magistrate Judge reasonably concluded that the statement was reliable based on the other evidence the government presented. Waters argues that Alexander's absence precluded him from establishing through cross examination that the person Alexander met in Florida and New York was actually Waters's brother and roommate, Donald Waters. However, Waters presented no evidence suggesting that his brother rather than he initiated contact with Alexander and traveled to meet him in Florida and New York. In light of Alexander's fugitive status

and the evidence corroborating his statement, the Magistrate Judge properly considered Alexander's hearsay statement at the final revocation hearing.

■ Although the Magistrate Judge properly considered Alexander's out-of-court statement, we cannot conclude that the District Court properly accepted his recommendation that Waters's supervised release be revoked. At oral argument, the government acknowledged that Alexander was no longer a fugitive at the time the District Court adopted the Magistrate Judge's report and recommendation. The applicable statutes required Judge Bertelsman to review Magistrate Judge Wehrman's conclusions *de novo.* 18 U.S.C. § 3401(i); 28 U.S.C. § 636(b)(1). Since Alexander was available to testify at the time the District Court entered his order, one of the bases for the Magistrate Judge's consideration of Alexander's statement— which constituted the only direct evidence of Waters's involvement in a drug conspiracy— was gone. In light of the changed circumstances, and because the out-of-court statements of co-conspirators tending to implicate the accused are viewed with skepticism, *see Lee v. Illinois,* 476 U.S. 530, 544–45, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), we hold that the Court's acceptance of the Magistrate Judge's conclusions without explanation constituted an abuse of discretion. Accordingly, we vacate the revocation of Waters's supervised release. On remand, the District Court should either conduct a new hearing to allow Waters to cross examine Alexander about his statement, or provide reasons for concluding that Alexander's testimony remains unnecessary although he now appears to be available to testify.

## V.

■ Waters next contends that the District Court erred in sentencing him *in absentia* for his supervised release violation. He claims that the District Court denied him his right under Rule 43(a) of the Federal Rules of Criminal Procedure to be present at the imposition of sentence, and of his right of allocution pursuant to Rule 32(c)(3)(C). The District Court held that Waters had waived this claim because he did not ask for a sentencing hearing before filing his Notice of Appeal. In his brief, Waters explains that he first raised this claim in his motion for release pending appeal because he assumed the District Court would hold a sentencing hearing before deciding whether to adopt the Magistrate Judge's sentencing recommendation. Under the circumstances, we decline to find that Waters waived his right to a sentencing hearing because the Magistrate Judge did not recommend that Waters be sentenced without a hearing.

This Court has yet to address this specific question of whether a defendant enjoys the right to be present and the right to allocute upon resentencing for violating the terms of his supervised release. Rule 43(a) of the Federal Rules of Criminal Procedure provides that "[t]he defendant shall be present ... at the imposition of sentence, except as otherwise provided by this rule." Rule 32(a) provides that "before imposing sentence, the court must ... address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." Our Court has held that "allocution is not required before resentencing after *probation* revocation." *United States v. Coffey,* 871 F.2d 39, 41 (6th Cir.1989) (emphasis added). The panel in *Coffey* reasoned that since Rule 32 does not mention probation revocation hearings, the Rule's allocution requirement did not apply in such hearings. *Id.* at 40 (citing *United States v. Core,* 532 F.2d 40, 42 (7th Cir.1976)). The government argues based on *Coffey* that Rule 32 does not confer on a defendant the right of allocution upon sentencing for violating his supervised release because Rule 32(c)(3)(C) is likewise silent with respect to supervised release. *Coffey* did not address the question of whether Rule 43(a) confers on a defendant a right to be present during sentencing for violation of supervised release; the district judge held a sentencing hearing at which Coffey was present.

■ Rule 43(a) sets forth the general requirement that a defendant must be present upon the imposition of sentence, and the remainder of the rule provides an exhaustive list of exceptions. Because supervised re-

lease revocation is not listed as an exception, we hold that the defendant must be present when the district court imposes sentence for a supervised release violation. *Accord United States v. Rodriguez,* 23 F.3d 919, 920–21 (5th Cir.1994). The District Court therefore erred by sentencing Waters without allowing him to be present. Because we are constrained by the reasoning underlying our decision in *Coffey,* however, we do not hold that a defendant enjoys an absolute right to allocute upon sentencing for violation of supervised release. Allocution provides the defendant with an opportunity to speak to the court personally before the court imposes a sentence. Although the right of allocution is not protected by the Constitution, it existed at common law. "As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal." *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961) (citing *Anonymous,* 87 Eng. Rep. 175 (K.B.)). The purpose of the right of allocution is to provide the defendant with an opportunity to plead personally for mitigation or mercy because "[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." 365 U.S. at 304, 81 S.Ct. 653.

Federal Rule of Criminal Procedure 32.1 is entitled "Revocation or Modification of Probation or Supervised Release." It provides in part that at a revocation hearing for a person held on the ground that he has violated a condition of probation or supervised release, that person shall be given:

(A) written notice of the alleged violation;

(B) disclosure of the evidence against the person;

(C) an opportunity to appear and to present evidence in the person's own behalf;

(D) the opportunity to question adverse witnesses; and

(E) notice of the person's right to be represented by counsel.

FED.R.CRIM.P. 32.1(a)(2). Rule 32.1(a)(2) is silent with respect to the sentencing phase of revocation hearing. Specifically, the rule is silent with respect to whether a defendant has a right to allocute before sentence is imposed at a revocation hearing.

Current Federal Rule of Criminal Procedure 32, among other things, addresses what courts must provide to defendants before imposing a sentence. Subsection (c)(3) codifies the Supreme Court's holding in *Green* and provides the right to allocute: "[b]efore imposing sentence, the court must ... (C) address the defendant personally and determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." FED. R.CRIM.P. 32(c)(3) previously Rule 32(a)(1)(C); *see id.* (advisory committee note) (codifying *Green* ).

In *United States v. Coffey,* 871 F.2d 39 (6th Cir.1989), this circuit held that then Federal Rule of Criminal Procedure 32(a)(1)(C), now at 32(c)(3) and materially similar, does not provide a right to allocute before "resentencing" at a *probation* revocation hearing. *See id.* at 40–41. The *Coffey* court relied on the following passage from *United States v. Core,* 532 F.2d 40 (7th Cir. 1976), where the Seventh Circuit reasoned that then-Rule 32(a)(1) "does not specifically mention probation revocation hearings but only requires the right of allocution be given before imposing sentence. We interpret the rule to mean that allocution is required only before imposing the original sentence...." *Coffey,* 871 F.2d at 40 (omission in original) (quoting *Core,* 532 F.2d at 42).[2]

We distinguish a supervised release revocation from the *Coffey* probation revocation because a sentence imposed for a violation of supervised release is a sentence for a new offense rather than mere "resentencing." In *United States v. Reese,* 71 F.3d 582 (6th

---

**2.** The Seventh Circuit has subsequently limited *Core* to the situation where probation suspends the "execution" of a sentence rather than the "imposition" of a sentence. *See United States v. Barnes,* 948 F.2d 325, 329 (7th Cir.1991). Thus, in the Seventh Circuit, the defendant has a right to allocute at a probation revocation hearing unless the defendant received a suspended sentence at his original sentencing that is now being imposed because the defendant violated probation. *See id.*

Cir.1995), this circuit distinguished between a supervised release violation and a probation revocation in the context of Ex Post Facto analysis. The *Reese* court held that "[b]ecause supervised release, unlike the previous parole system, is a form of punishment that is separate from the maximum incarceration period that attaches to the original offense, a violation of that supervised release also results in a separate punishment that does not implicate the Ex Post Facto Clause." *id.* at 588; *see also id.* at 590 ("[W]hen [the defendant] was returned to prison it was to serve time for the violation of supervised release, not for the original offense."). In effect, a sentence for violation of supervised release is a sentence for a new offense, while a sentence for violation of probation is imposed for the original offense. Because sentencing for a violation of supervised release constitutes a new sentence, we distinguish sentencing for a violation of supervised release from "resentencing" for a probation violation.

In sum, we find that neither Rule 32 nor *Coffey* determines whether a right to allocution exists at sentencing for a violation of supervised release. A majority of the circuits that have addressed this issue have held that the right of allocution found in Rule 32 applies at supervised release revocation hearings. *Compare United States v. Patterson,* 128 F.3d 1259, 1261 (8th Cir.1997) (holding that Rule 32 provides a right of allocution at a supervised release revocation hearing), *United States v. Rodriguez,* 23 F.3d 919, 921 (5th Cir.1994) (same), *and United States v. Carper,* 24 F.3d 1157, 1159–62 (9th Cir.1994) (same) *with United States v. Fennell,* No. 92–1001, 986 F.2d 1430, 1992 WL 401587, at *3–*4 (10th Cir. Dec. 22, 1992) (holding that no right of allocution exists at a supervised release revocation hearing). However, applying Rule 32 to supervised release sentencing would require, in addition to allocution, probation officers to prepare presentence reports before a supervised release sentencing. *See* FED.R.CRIM.P. 32(b). There is no indication that Congress intended these additional requirements to apply to supervised release sentencing.

■ Given the importance of allocution and our court's holding in *Reese* that punishment for a violation of supervised release is a separate punishment from the punishment imposed for the original crime, we exercise our supervisory powers to require the district courts in our circuit to provide defendants with an opportunity to allocute before imposing a sentence for a violation of supervised release. *Cf. Green,* 365 U.S. at 306, 81 S.Ct. 653 (Stewart, J., concurring) (arguing that Federal Rule of Criminal Procedure 32(a) did not require allocution, but concurring because he would require allocution prospectively via "the exercise of our supervisory capacity"); *Couch v. United States,* 235 F.2d 519, 521 (D.C.Cir. 1956) (establishing an allocution requirement prospectively "[i]n our supervisory capacity"). District courts, before imposing sentence, must address the defendant personally and determine whether the defendant wishes to make a statement in order to mitigate the sentence. We possess supervisory power to create rules of procedure for our district courts. *See United States v. McDowell,* 814 F.2d 245, 249–50 (6th Cir.1987) (applying supervisory powers to require district courts to make inquiry and express findings when a defendant asks to represent himself); *see generally Thomas v. Arn,* 474 U.S. 140, 146, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) ("It cannot be doubted that the courts of appeals have supervisory powers that permit, at the least, the promulgation of procedural rules governing the management of litigation."). "This power rests on the firmest ground when used to establish rules of judicial procedure." *Thomas,* 474 U.S. at 147 n. 5, 106 S.Ct. 466.

■ We can use our supervisory powers to create a procedural rule so long as the rule does not conflict with the Constitution or a statute. *See id.* at 148, 106 S.Ct. 466 ("Even a sensible and efficient use of the supervisory power, however, is invalid if it conflicts with constitutional or statutory provisions."). No such conflict exists here as discussed above, the Federal Rules of Criminal Procedure are silent with respect to the right of allocution at supervised release revocation hearings. Thus, as in *Thomas,* the Federal Rules of Criminal Procedure here do "not forbid such a rule." *Id.* at 149, 106 S.Ct.

466. Additionally, the Constitution neither requires nor forbids allocution at a supervised release revocation hearing. *See Coffey,* 871 F.2d at 40 (holding that the Constitution does not require allocution); *cf. Green,* 365 U.S. at 304, 81 S.Ct. 653 (holding that then Federal Rule of Criminal procedure 32(a) required sentencing courts to provide the defendant with an opportunity to allocute).

The rule we create here from our supervisory power only applies prospectively. *See, e.g., McDowell,* 814 F.2d at 250 (applying supervisory power to create a rule with prospective application only); *United States v. Florea,* 541 F.2d 568, 572 (6th Cir.1976) (same). Because we are remanding, our newly announced prospective rule will also require the District Court to provide the defendant with an opportunity to allocute on resentencing.

## VI.

■ Waters raises two other claims on appeal. He contends that his total sentence of imprisonment plus supervised release should be limited to eight years because the District Court failed to inform him of the consequences of violating the terms of his supervised release at the plea hearing. He reasons that since the judge told him at the time of the plea that he faced a maximum sentence of eight years, his new sentence of twenty-four months is unfair because it brings his total term of imprisonment plus supervised release to over eight years.

The government concedes that the District Court technically failed to comply with Rule 11(c)(1), which required it to inform Waters of "the maximum possible penalty provided by law, including the effect of any special parole or supervised release term." It contends, however, that the District Court's error was harmless because Waters signed a probation form when he was first incarcerated informing him that his supervised release could be revoked if he violated the terms, and because even with Waters's new twenty-four month term, his total sentence of imprisonment will not exceed the eight-year maximum.

This is not a case where the district judge failed to tell the defendant that his sentence could include a term of supervised release. There is no doubt that both Waters's plea agreement and the District Court explicitly informed him of this possibility. *Cf. United States v. Syal,* 963 F.2d 900, 906–07 (6th Cir.1992) (district court's failure to advise defendant that sentence would include term of supervised release not harmless error where nothing in record suggested that defendant understood that supervised release would be part of sentence). In addition, Waters signed probation forms after his original sentence was imposed in 1991 and again after his guilty plea in 1994 stating that he understood his supervised release could be revoked following a violation. In light of this notice, we conclude that the court's failure to comply with the rule constituted harmless error in this instance. *See United States v. Coffey,* 871 F.2d 39, 41 (6th Cir.1989) (district judge's failure to inform defendant of consequences of violating terms of supervised release not reversible error where judgement and commitment order contained clear statement that supervised release could be revoked for violation).

■ Finally, Waters argues that the revocation proceedings are "null and void" because his probation officer exceeded his explicitly statutory authority by actually requesting the revocation of his supervised release rather than simply reporting a suspected violation. He claims that although the probation officer must "immediately report any violation of the conditions of release to the Court and the Attorney General or his designee," 18 U.S.C. § 3603(8)(B), it is up to the Attorney General to petition for the revocation of supervised release. Because the probation officer's conduct constituted "the unauthorized practice of law," Waters contends that the proceedings against him are invalid. In support of this proposition, he cites a single district court decision. *United States v. Jones,* 957 F.Supp. 1088, 1090 (E.D.Ark. 1997) (dismissing petitions for revocation filed by probation officer rather than United States Attorney). Several courts have expressly rejected *Jones'*s reasoning. *See United States v. Burnette,* 980· F.Supp.

1429, 1434 (M.D.Ala.1997); *United States v. Berger,* 976 F.Supp. 947, 949–50 & n. 4 (N.D.Cal.1997); *United States v. Wilson,* 973 F.Supp. 1031, 1032–33 (W.D.Okla.1997). Nevertheless, like the argument regarding the right to be present at sentencing, Waters did not raise his challenge based on *Jones* until he filed his motion for bond pending appeal. Unlike the sentencing claim, however, there is clearly no reason why Waters could not have raised this attack before judgment was entered against him. We therefore hold that Waters has waived his right to pursue this claim on appeal.

### VII.

For the reasons stated, we VACATE the order of the District Court revoking Waters's term of supervised release, and we RE-MAND the case for further proceedings consistent with this opinion.