NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0221n.06

No. 19-1531

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Apr 22, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| MARCUS LOFTON, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |

Before: GILMAN, DONALD, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. The district court revoked Marcus Lofton's supervised release after it found him guilty of violating the conditions of his release by possessing and using cocaine. Lofton challenges the district court's decision on three grounds. The first two—that the district court relied on hearsay evidence and insufficient evidence—do not warrant reversal. The third— ineffective assistance of counsel—we decline to address because such claims are better handled in post-conviction proceedings. Accordingly, we AFFIRM.

I.

Lofton was serving a thirty-month term of supervised release when he was charged with four violations of his release conditions. Lofton pleaded guilty to the first two violations, which charged him with being "out of place" by representing that he was at work when he was not. Those violations are not at issue on appeal. The focus of this appeal is the other two charged violations— possession and use of cocaine—to which Lofton pleaded not guilty.

During Lofton's supervised release, he was living at a half-way house that performed random drug testing. He provided a urine sample for one such test in March 2019, and the sample tested positive for cocaine use. The government then sought revocation of Lofton's supervised release.

At the revocation hearing, the government provided chain-of-custody documentation for the urine sample and a lab report indicating that the sample had tested positive. It also called three witnesses. Jiech Jagah, the half-way house's residential-care coordinator, testified that he personally witnessed Lofton provide the urine sample and that they, together, had sealed, labeled, signed, and resealed the urine sample before leaving it in a refrigerator to be sent to a regional lab for testing.

Sheryl Fett, Lofton's supervising probation officer, testified that she received an email from the regional lab indicating that Lofton's urine sample had tested positive for cocaine use and that she requested that the sample be sent on to Alere Toxicology Services to confirm that result. She also testified to her understanding of the testing process at the regional lab.

Finally, Patricia Pizzo, the director of toxicology at Alere, testified to how her lab receives, processes, and tests urine samples, noting that if a sample is not sealed or shows any other indication of tampering, the sample is rejected and will not be tested. Pizzo also testified that Alere received the sample and the chain-of-custody documentation sent from the regional lab and that Alere's testing adhered to its protocol and confirmed the results of the regional lab.

Lofton questioned whether the sample tested by the regional lab was the same as that tested by Alere because the regional lab had, after testing it, sent the sample to Alere in a new bottle. Lofton also testified in his own defense and denied ever having used cocaine.

The district court subsequently issued an order finding Lofton guilty of violating his supervised-release conditions by possessing and using cocaine. To make that finding, the district court relied on the chain-of-custody documentation, the Alere lab report, and the testimony of the three government witnesses, whom the district court found credible. Lofton was sentenced to twenty-one months' imprisonment for the cocaine-possession violation and fourteen months for the other three violations, all running concurrently.

Lofton timely appealed. He now raises three claims: (1) that the district court erred in relying on hearsay evidence, in the form of the Alere lab report, without determining its reliability or explicitly balancing the government's and Lofton's competing interests in confrontation; (2) that there was insufficient evidence to support the district court's finding of guilt; and (3) that his counsel provided ineffective assistance. For the reasons given below, each claim is unavailing.

## II.

### A.

Defendants in supervised release revocation hearings do not enjoy the same procedural and evidentiary protections as at trial. *See Morrissey v. Brewer*, 408 U.S. 471, 488–89 (1972). For example, the Confrontation Clause of the Sixth Amendment does not apply, *United States v. Kirby*, 418 F.3d 621, 627–28 (6th Cir. 2005), and neither do the rules of evidence, Fed. R. Evid. 1101(d)(3). Instead, the Supreme Court has held that "the process should be flexible enough to consider evidence[,] including letters, affidavits, and other material[,] that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489.

Still, "[s]upervised release revocation proceedings, like their forerunners (parole revocation proceedings), are subject . . . to 'minimum requirements of due process.'" *United States v. Kokoski*, 435 F. App'x 472, 474 (6th Cir. 2011). And Rule 32.1 of the Federal Rules of

Criminal Procedure sets out that baseline process.  *See United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998) (describing Rule 32.1(b)(2) as "essentially a codification of the minimum due process requirement established by the Supreme Court for state parole revocation in *Morrissey*").  Among other procedures, that rule guarantees a person in revocation proceedings the right to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear."  Fed. R. Crim. P. 32.1(b)(2)(C).  Interpreting a prior (and arguably more defendant-friendly) version of this rule,[1] we held that district courts may consider "hearsay evidence in final revocation-of-supervised-release hearings" if that evidence is "reliable" and "the defendant's need for confrontation is outweighed by the government's ground for not requiring confrontation."  *Waters*, 158 F.3d at 940.

Lofton argues on appeal that the district court erred by relying on hearsay evidence, in the form of a report from the Alere lab, which confirmed that the urine specimen it analyzed was positive for cocaine use.  His primary contention is that before admitting this evidence, the district court was required to expressly balance the government's interest in relying on the hearsay report against Lofton's interest in cross-examining its maker.  Even if explicit balancing is not required, however, Lofton argues that the district court erred by admitting the hearsay report without making any finding that the lab report was reliable.

But Lofton made neither argument in the district court.  In fact, he did not expressly object to admission of the lab report on any ground.  That is likely because, in the district court, "Lofton d[id] not contest that the specimen tested by Alere [tested positive for] cocaine metabolite."  Rather

---

[1] Prior to its amendment in 2002, Rule 32.1 did not include the "interest of justice" exception to a defendant's right to question adverse witnesses.  Instead, it stated, without qualification, that persons subject to final revocation proceedings have "the opportunity to question adverse witnesses."  Fed. R. Crim. P. 32.1(a)(2)(D) (2001).

than challenging the test results, Lofton argued that the tested specimen was not his. Because Lofton did not object in the district court, we review for plain error. *See United States v. Prater*, 766 F.3d 501, 506 (6th Cir. 2014) (citing Fed. R. Crim. P. 51(b)); *see also Kokoski*, 435 F. App'x at 476.

Lofton contends that plain-error review is improper here because defense counsel did try to object to the Alere lab report, but the district court interrupted him. Lofton is referring to an exchange that occurred early in the revocation hearing. The government offered two proposed exhibits, the "Chain of Custody for Drug Analysis signed by [Jagah]" and the Alere "drug test report." The court asked Lofton's defense attorney, Ronald Lindh, if he had any objections. Lindh replied, "Well, the defense recognizes that the Rules of Evidence don't apply in these hearings—" and the district court cut in: "Right." Lindh then continued, "[S]o there's really nothing to—as long as I get an opportunity to speak to the witnesses about the—" when he was again interrupted by the district court: "You will. You'll have full opportunity to do that, sir."

We disagree with Lofton that this exchange adequately preserved an objection to the Alere lab report. Federal Rule of Evidence 103(a)(1) states that "a party may claim error in a ruling to admit . . . evidence only if" the party "states the specific ground" for the objection, "unless it was apparent from context." "For a claim of error to 'constitute a sufficiently articulated objection,' a party must 'object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection.'" *Prater*, 766 F.3d at 506 (quoting *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004)). Here, Lofton made no express objection to admission of the lab report, let alone any objection that would have alerted the trial court specifically to Lofton's view that the court needed to balance the government's interest in relying on hearsay against his interest in confrontation or to determine the report's reliability.

The most that might be said (and we think this a generous reading) is that Lofton offered, and the court sustained, a conditional objection to the report, which would be cured "as long as [Lofton's attorney got] an opportunity to speak to the witnesses" who authored the report. But when the government failed to produce that witness, it was incumbent upon Lofton to move to strike the report or otherwise renew his objection. When "a condition attached to the admission of evidence is not satisfied by the offering party, the burden properly rests with the objecting party to renew the objection." *United States v. Dougherty*, 895 F.2d 399, 403–04 (7th Cir. 1990) (collecting cases). As the Supreme Court has noted in an analogous context, when evidence is admitted on the condition that the proponent will later establish a proper foundation, "[i]t is, of course, not the responsibility of the judge sua sponte to [e]nsure that the foundation evidence is offered; the objector must move to strike the evidence if at the close of the trial the offeror has failed to satisfy the condition." *Huddleston v. United States*, 485 U.S. 681, 690 n.7 (1988) (quoting 21C Charles Alan Wright, Arthur R. Miller, & Kenneth W. Graham, *Federal Practice and Procedure* § 5054 (1977)). So even on a generous reading of the record, Lofton did not preserve the challenges he now raises to the admission of the lab report. We therefore review them for plain error.

To prevail on plain error, Lofton must identify "an '(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Crawford*, 943 F.3d 297, 308 (6th Cir. 2019) (quoting *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)). An error is "obvious or clear" when "the error is clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993). And an error affects a defendant's substantial rights if there is "'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different."

*Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76, 82 (2004)).

*Reliability Challenge*. Lofton contends that the district court erred by admitting the Alere lab report without first considering its reliability. To remedy that alleged error, he asks us to "remand[] for a new hearing with instructions" to "at a minimum" make a "reliability determination." To the extent that Lofton is suggesting that the district court made a procedural error by failing to determine reliability on the record, he fails to show any error that was "plain." Lofton does not point us to any case in which a district court has been required to make an explicit reliability determination, much less one in which the district court was required to do so when the evidence's reliability was not contested. This alone is fatal to Lofton's claim because any error was not "clear under current law." *Olano*, 507 U.S. at 734; *see also United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) ("A lack of binding case law that answers the question presented will . . . preclude our finding of plain error.").

Lofton's briefing might also be read to suggest a substantive error—that the Alere lab report was unreliable and, therefore, should not have been admitted. But Lofton has given us no indication that the lab report is unreliable; accordingly, he has failed to show any error at all. Rather than attack the reliability of the Alere report in particular, Lofton relies on the Supreme Court's general observation that the products of "neutral scientific testing" may not be "as neutral or as reliable" as their proponents suggest. *See Melendez-Diaz* v. *Massachusetts*, 557 U.S. 305, 318 (2009). But nothing in *Melendez-Diaz* suggests that forensic evidence is *per se* unreliable; the Court merely held that any "particularized guarantees of trustworthiness" inherent in scientific testing do not exempt it from the Confrontation Clause. *Id.* at 317–18 (quoting *Ohio v. Roberts*, 448 U.S. 56, 66 (1980)). Here, of course, the Confrontation Clause does not apply. *Kirby*, 418

F.3d at 628. Instead, district courts may "consider[] reliable hearsay evidence in final revocation-of-supervised-release hearings." *Waters*, 158 F.3d at 940. Lofton has failed to demonstrate that the Alere lab report is unreliable and has therefore not shown any error.

*Balancing Challenge*. Lofton next argues that the district court erred by admitting the Alere lab report without "specifically discuss[ing] the balancing test requirement of Rule 32.1." But this challenge is likewise reviewed for plain error, and here too, Lofton has failed to establish that any error was clear under current law.

Rule 32.1 gives those in revocation proceedings the right to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C); *see also Morrisey*, 408 U.S. at 489 (holding that due process requires "the right to confront and cross-examine adverse witnesses unless the hearing officer specifically finds good cause for not allowing confrontation"). Lofton argues that the district court erred by admitting the Alere lab report without first "balanc[ing] the confrontation interests of the defendant against the government's good cause for not presenting a live declarant." But, as discussed above, Lofton never asserted his confrontation interests. We know of no case holding that a district court must weigh the parties' interests when, as here, the defendant "raised no objection to the [hearsay evidence] in the district court," leaving "the district court [with] no reason to engage in a balancing" of the competing interests. *United States v. Belser*, 214 F. App'x 961, 962 (11th Cir. 2007); *see also United States v. Simms*, 757 F.3d 728, 733 (8th Cir. 2014) (holding that the balancing test is not required where the defendant fails to object); *United States v. Stanfield*, 360 F.3d 1346, 1359–60 (D.C. Cir. 2004) (same). At minimum, no case from this circuit holds that the district court was required to perform an explicit balancing of interests in the circumstances

presented by Lofton's case.  Thus, under plain-error review, we must affirm.  *See Al-Maliki*, 787 F.3d at 794.

B.

Lofton next argues that there was insufficient evidence for the district court to find him guilty of possession and use of cocaine.  To revoke a defendant's supervised release, a district court must find "by a preponderance of the evidence that the defendant violated a condition" of his release. 18 U.S.C. § 3583(e)(3).  We review those revocations for an abuse of discretion. *United States v. Givens*, 786 F.3d 470, 471 (6th Cir. 2015).  We reverse a district court under that standard only "when we are left with a 'definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached.'"  *United States v. Williams*, 520 F. App'x 420, 422–23 (6th Cir. 2013) (quoting *United States v. Stephenson*, 928 F.2d 728, 732 (6th Cir. 1991)).

Lofton's primary argument is that once the "unconfronted hearsay" evidence relied on by the district court is removed from our calculus, there is insufficient support for the district court's finding.  But because we have already concluded that the district court did not plainly err in relying on the Alere lab report, we need not exclude it.  Accordingly, this argument fails.

Lofton's remaining argument is that "the government failed to demonstrate a valid chain of custody for the urine specimen" or "the irregularities on the specimen container."  But the record does not support this conclusion.  In testimony that the district court found credible, Fett and Pizzo expressed their "confidence" in the chain of custody documentation because there was no "indication of tampering whatsoever."  And Fett explained that there were no "irregularities" on the specimen container; instead, "two separate [containers]" were used, one to send the specimen to the regional lab and one to send it to Alere.

After considering Jagah's, Fett's, and Pizzo's testimony, the chain-of-custody documentation, and the Alere lab report, the district court found by a preponderance of the evidence that Lofton violated his supervised release by possessing and using cocaine. Taking the evidentiary record as a whole, we are not left with a "definite and firm conviction" that the district court "committed a clear error of judgment." *Williams*, 520 F. App'x at 422–23 (quoting *Stephenson*, 928 F.2d at 732).

C.

Lofton's final claim is that he was deprived of his Sixth Amendment right to effective assistance of counsel. We note at the outset that although financially eligible defendants do have a statutory right to counsel at revocation hearings, *see* 18 U.S.C. § 3006A(a)(1)(E), it is not clear "whether [Lofton] has a constitutional right to effective assistance of counsel at a revocation hearing." *England v. United States*, No. 17-1475, 2017 WL 9248942, at *2 (6th Cir. Nov. 7, 2017) (noting that "this court has not authoritatively decided" this question); *see also United States v. Owen*, 854 F.3d 536, 541 (8th Cir. 2017) (citing *Morrissey*, 408 U.S. at 480, to conclude that there is no Sixth Amendment right to counsel in a revocation hearing); *United States v. Pelensky*, 129 F.3d 63, 68 n.8 (2d Cir. 1997) ("Among the fundamental constitutional protections that do not apply in the context of supervised release revocation proceedings [is] . . . the right to counsel."). In any event, "[w]e do not ordinarily review claims of ineffective assistance on direct appeal." *United States v. Carson*, 796 F. App'x 238, 242 (6th Cir. 2019) (citing *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006)). These claims are more properly raised in post-conviction proceedings where the record may be developed in greater detail. *Lopez-Medina*, 461 F.3d at 737.

We therefore decline to address this claim on direct appeal.

\* \* \*

For the reasons stated, we AFFIRM the district court's revocation of Lofton's supervised release.

\* \* \*