WHITE, J.,
dissenting.
Because Kokoski was deprived of his right to cross-examine adverse witnesses at the revocation hearing, in violation of due process, and the error was not harmless, I respectfully dissent.
The Government called no witnesses at the revocation hearing. Only Frommeyer, Kokoski’s probation officer’s supervising officer who had signed the Petition for Warrant and Supervised Release Violation Report, spoke, without having been sworn to tell the truth.
Kokoski’s counsel objected, stating “Your Honor, we would like to cross-examine the evidence in some format. The government’s called no witnesses. I anticipated that they would put on some type of evidence to substantiate the violation.” R. 58 at 62. Kokoski’s counsel also objected to the district court relying on counselor Fischer’s and Dr. Moster’s reports, which were attached to Frommeyer’s Supervised Release Violation Report.
The Government conceded at argument that Frommeyer had no first-hand knowledge of the contents of his report, which included the statement that “It is the opinion of Kokoski’s group treatment counselor [Melissa Fischer] that Kokoski was not engaged in treatment and his behavior was disruptive to the group process.” Yet, as discussed below, counselor Fischer’s group therapy notes state no such opinions.
Given Kokoski’s objection to not being able to cross-examine adverse witnesses, the district court was obligated to balance Kokoski’s right to cross-examine counselor Fischer and psychologist Moster against the Government’s reasons for denying it, and to determine whether the Government established good cause for failing to have them appear. See Fed.R.Crim.P. 32. 1, Advisory Committee Notes to the 2002 Amendments:
Rule 32.1(b)(2)(C) address[es] the ability of a releasee to question adverse witnesses at the ... revocation hearing. [That] provision[] recognize[s] that the court should apply a balancing test at the hearing itself when considering the releasee’s asserted right to cross-examine adverse witnesses. The court is to balance the person’s interest in the constitutionally guaranteed right to confrontation against the government’s good cause for denying it. See, e.g., Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); United States v. Comito, 177 F.3d 1166 (9th Cir.1999); United States v. Walker, 117 F.3d 417 (9th Cir.1997); United States v. Zentgraf, 20 F.3d 906 (8th Cir.1994).
See also United States v. Waters, 158 F.3d 933, 940 (6th Cir.1998) (noting that under Rule 32.1 “the trial court may consider reliable out-of-court statements in a final revocation hearing provided that the defendant’s need for confrontation is outweighed by the government’s ground for not requiring confrontation”).[1] Here, the *479 district court made no such inquiry of the Government, and the Government showed no cause, good or otherwise, for failing to present any witnesses.
The majority concludes that 1) Kokoski did not object to the court’s consideration of Frommeyer’s report and statements, and 2) that Kokoski had the opportunity to question Frommeyer about the contents of his report but “chose not to do so, presumably because he did not contest the accuracy of the relevant portions of Frommeyer’s report and statements.” I disagree with both determinations. Defense counsel stated at the revocation hearing that Kokoski denied Frommeyer’s allegation that he had violated his supervised release, and counsel’s objection to the Government’s failure to present witnesses included that the Government had presented no evidence substantiating Frommeyer’s report and statements. Thus, I cannot agree with the majority that Kokoski failed to object to Frommeyer’s report and statements standing alone, and chose not to question Frommeyer “presumably because he did not contest the accuracy of’ Frommeyer’s report and statements. Because Frommeyer had no first-hand knowledge of any of the contents of his report, questioning him would have yielded only repetition of the very conclusion Kokoski sought to challenge by examining the source of the information.
The majority concludes regarding counselor Melissa Fischer and psychologist Moster’s writings, which were attached to Frommeyer’s Violation Report, that 1) the district court “reasonably concluded that both evaluations were reliable,” 2) there is no reason to doubt that the two reports satisfy the requirements of the business-records exception to the hearsay rule, and 3) because both reports fall within this “firmly rooted hearsay exception” their reliability can be inferred without more.
The district court made no such determinations on the record — it did not address the reliability of the counselors’ reports and it did not address whether it could properly consider them under any hearsay exception, rather, the court stated that the “Rules of Evidence do not apply to supervised violation hearings and the Court may rely on hearsay. I am within my authority to rely on what Mr. Frommeyer has reported this afternoon. It seems to me then the burden shifts to the Defendant ... to present evidence or arguments that would negate the report and the contents of the report.” R. 58 at 22-23.
In Waters, 158 F.3d at 940-41, an appeal from a supervised-release revocation, the defendant challenged the Magistrate’s reliance on hearsay evidence as insufficiently reliable. This court noted that documents properly admitted under the firmly-rooted business-records exception do not violate the Confrontation clause:
As the Magistrate Judge observed, both exhibits contain notations stating that they are true copies of hotel records kept in the ordinary course of business. Such records are generally considered reliable enough to overcome exclusion from evidence on hearsay grounds, see Fed.R.Evid. 803(6).... Under the circumstances, we hold that the Magistrate Judge acted within his discretion in considering the hotel records without requiring the government to call the custodians to testify.
*480 Frommeyer, the only person who spoke at the revocation hearing, did not state that either of the therapists’ writings were kept in the regular course of business. Neither of the reports so states, either.
Most importantly, Fischer’s report does not support the central statement in Frommeyer’s Supervised Release Violation Report, that “It is the opinion of Kokoski’s group treatment counselor [Melissa Fischer] that Kokoski was not engaged in treatment, and his behavior was disruptive to the group process.” Fischer’s report stated in its entirety:
Michael was discussing his probation requirements and expressed his anger about his lack of freedom. He stated, “sometimes I get so mad I feel as if I could get a gun and shoot Tom Bar-beau.” [a margin edit initialed MF said “in the head”] Other group members chuckled in response thinking that the comment was not serious, and [Kokoski] stated, “No I am serious, I could do that.” Counselor expressed concern, and explained to [Kokoski] that he cannot leave until it is clear that he has no intent to harm Tom or anyone else. At this point [Kokoski] stated, “Oh I would not hurt Tom. I have no intention of that. I am just angry about my situation. I do not own a gun.” Just after that statement, Michael followed with, “... but I could go get one if I got angry enough.” Counselor again expressed concern, and client stated, “Oh I am not serious honey, I did not mean for you to take it so personally.” To which counselor replied, “I am doing my job which is to make sure everyone is safe, and I am not convinced that you (client) are safe to leave here and will not be a threat to anyone’s safety.” Client again stated that he would not harm anyone or himself and counselor had him sign a statement that he would not harm Tom Barbeau. Michael understood that his probation officer (Tom Barbeau) would be notified. After client left, Tom [PO Barbeau] was notified by Lisa Schneider via email of the situation.
[signed, Melissa Fischer, MA, PCCR 4/7/10]
4/8/10
9:20 a.m. Counselor spoke directly with Tom Barbeau and relayed all information about interaction with Michael Kowkowski [sic]. Counselor shared clinical impressions that client was making contradictory statements the day before (4/7/10) in order to test boundaries and attempt to manipulate counselor; however, that counselor took precautions such as a written contract and notifying Tom of incident.
[signed Melissa Fischer, MA PCCR 4/8/10]
In sum, counselor Fischer’s report opined neither that Kokoski was not engaged in treatment nor that Kokoski’s behavior was disruptive to the group process.
I also largely disagree with the majority’s determination that, in any event, Fischer’s and Moster’s evaluations “are detailed accounts that corroborate each other and indeed have been corroborated by Kokoski himself.” There is no indication that Dr. Moster ever met with or observed Kokoski in therapy or had any first-hand knowledge of the behaviors she reported in her discharge summary. Most importantly, however, is that Dr. Moster’s discharge summary draws its own conclusions regarding Kokoski’s expressing violent thoughts in group therapy regarding probation officer Barbeau, conclusions which differ greatly from counselor Fischer’s. Counselor Fischer, who indisputably led the April 7 group therapy session, stated in her counseling notes her clinical impression that Kokoski’s back and forth re *481 marks regarding PO Barbeau were him “making contradictory statements ... in order to test boundaries and attempt to manipulate counselor [Fischer herself].” As defense counsel repeatedly argued at the revocation hearing, Fischer’s clinical impression that Kokoski was testing her boundaries and attempting to manipulate her was contradicted by Dr. Moster’s discharge summary’s clinical impressions, which stated, inter alia, that:
In reviewing progress notes and statements from staff members regarding his time at IKRON, it is my determination that he posed an imminent risk to safety of other persons, moved from general expression of frustration with probation requirements to specific and deadly threat toward his probation officer whom he deemed responsible. He did not make a vague, ill-defined threat but rather a clear and specific threat including reasons for the threat, a plan that was within his range of possibility, and a designated individual. His words indicate that his anger is,at a level of homicidal ideation and plan, and could escalate to action....
Nor did Kokoski corroborate Dr. Moster’s clinical impression. Kokoski’s counsel corroborated only that Kokoski made statements in one group therapy session led by counselor Fischer that sometimes he got so angry that he would like to shoot P.O. Barbeau, and that Kokoski took a friend from the residential re-entry center at which he was residing with him to his first therapy session, whom he introduced as his attorney. Kokoski in no way corroborated that he was not meaningfully participating in drug treatment, he adamantly maintained at the revocation hearing that he had participated in treatment, and had thus not violated his supervised release.[2]
In United States v. Whitely, 356 Fed.Appx. 839, 842 (6th Cir.2009) (unpublished), this court concluded that the district court’s reliance on unsworn testimony of the probation officer was error:
The flexible evidentiary standard that applies to revocation proceedings allows consideration of evidence that would be inadmissible in a criminal prosecution, United States v. Kirby, 418 F.3d 621, 628 (6th Cir.2005)[3], including letters, affidavits, and other documents, Morrissey, 408 U.S. at 489[, 92 S.Ct. 2593], as well as hearsay that bears indicia of reliability, United States v. Stephenson, 928 F.2d 728, 732 (6th Cir.1991). But despite these relaxed standards, “defendants are entitled to minimal due process requirements, including the right to *482 confront and cross examine adverse witnesses.” United States v. Torrez, No. 96-1973, 1997 WL 745520, at *2 (6th Cir. Nov.24, 1997); see also Fed.R.Crim.P. 32. 1(b)(2)(C) (providing accused the right to question adverse witnesses at supervised release revocation hearing). Despite these limited protections, we can assume, without deciding, that the district court’s consideration of the unsworn probation officer’s statements violated Whitely’s rights and constituted an obvious error. We conclude, however, that any error was harmless because it did not affect Whitely’s substantial rights.
[ ] To decide the prejudice issue here we examine whether the record — without the probation officer’s statements — independently supports the court’s findings and withstands a sufficiency challenge. We conclude that it does, and therefore find no prejudice to Whitely from this error.
During the pendency of this appeal, this court issued United States v. Jackson, 422 Fed.Appx. 408 (6th Cir.2011) (unpublished), which relied on Whitely. As in Whitely, the defendant in Jackson did not object below. As in Whitely, the court in Jackson assumed that consideration of the probation officer’s unsworn statement and failure to offer Jackson the opportunity to crossexamine the officer were error. The court concluded that the error did not affect Jackson’s substantial rights because he admitted three of the alleged violations and the district court found that those three violations alone constituted a violation that required revocation, noting ‘With or without the officer’s statement, the court was required to revoke Jackson’s supervised release.”
In the instant case, unlike in Whitely and Jackson, Kokoski objected to his inability to cross-examine adverse witnesses. Kokoski did not admit that he violated his supervised release; rather, he maintained that he participated in treatment. An examination of the record without Frommeyer’s report and statements, i.e., counselor Fischer’s and Dr. Moster’s reports, does not support the district court’s finding that Kokoski failed to participate in treatment. Dr. Moster was not present when Kokoski made the statements at issue during a group therapy session, and from all indications had no first-hand knowledge of any of the contents of her report. Counselor Fischer, the only one who had first-hand knowledge of Kokoski’s behavior and statements, opined that Kokoski was testing her boundaries and attempting to manipulate her by expressing his thoughts about his probation officer, not, as Frommeyer’s Supervised Release Violation Report stated, that Fischer opined “that Kokoski was not engaged in treatment, and his behavior was disruptive to the group process.”
Assuming, as the majority concludes, that counselor Fischer’s report was reliable hearsay, Fischer’s report did not support Frommeyer’s allegation that Kokoski failed to participate in treatment and thereby violated his supervised release.
Under these circumstances, the district court’s finding of a supervised-release violation and its imposition of a sentence well above the Guidelines range, in the face of its denial of Kokoski’s right to cross-examine adverse witnesses, was not harmless error.

. Am Jur, Pardon & Parole § 149, states:
A parolee must be afforded the opportunity for an effective rebuttal of the allegations presented. Although a formal hearing and formalized cross-examination are not necessary, on the request of the parolee, a person who has given adverse information on which parole revocation is to be based must be made available for questioning in the parolee’s presence. The parole board may not circumvent this requirement by declining to offer the witness’s live testimony and relying instead on summaries of what the witness would testily to if called. Rather, only if the hearing examiner finds good cause for not producing the witness ... can the government be excused from proffering the best evidence.
*479 See also Neil P. Cohen, The Law of Probation and Parole (2d ed.), § 26.24 at 26-57:
The record of the final revocation hearing should ... include the reason for any denial of the rights of confrontation ... Morrissey provides for a right of confrontation unless the decisionmaker “specifically finds” good cause to disallow it....

. The majority cites a pro se filing of Kokoski’s to support that Kokoski admitted that he was not interested in sobriety and did not view himself as having a drug problem, but the district court had struck all of his pro se filings, its order stating that it did so because Kokoski was "ably represented” by Federal Defender Maus, Maus did not co-sign or authorize the pro se filings, and that "a review of the pro se pleadings reveals that each of them suffers from the same infirmity, i.e., lack of formal legal education that might have given Defendant a thorough understanding of the context in which his legal snippets arise. This Court concludes that each of the pro se motions should be stricken from the docket.” R. 44, order entered 7/22/10.

. In Kirby, 418 F.3d at 627, this court held that the district court did not err in relying solely on the probation officer's (sworn) testimony to establish that the defendant had committed crimes while on supervised release where the probation officer's “testimony reflects that he engaged in an independent and thorough investigation of allegations that Kirby had committed crimes while on supervised release,” that is, the sworn PO "personally reviewed surveillance tapes from businesses at which Kirby had passed stolen checks during five separate incidents. Based on his personal review of the videotapes, he identified Kirby as the individual passing the stolen checks.”