**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0345n.06

**No. 09-3500**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jun 07, 2010**
LEONARD GREEN, Clerk

DAVID SWAIN,

       Plaintiff - Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant - Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE: MARTIN, SUHRHEINRICH, and WHITE, Circuit Judges**.**

      **HELENE N. WHITE, Circuit Judge.** David Swain appeals from the district court's affirmance of the Commissioner of Social Security's decision denying his application for Social Security Disability Insurance Benefits (DIB) on the basis that he was not disabled prior to the expiration of his insured status in March 2002. We affirm.

**I**

      Swain alleges that he became disabled in August 2000, when he aggravated a prior back injury while lifting a heavy pot. His insured status expired on March 31, 2002. Swain has an extensive record of physician visits.[1] He first sought treatment for his injury in December 2001 from Dr. Neriel Bernblum, to whom he reported pain radiating from his left buttock to his left foot,

---

[1] We do not find it necessary to recount every physician visit and diagnosis, so we only recount the facts most relevant to the ALJ's decision.

and left foot numbness. Dr. Bernblum ordered a magnetic resonance imaging scan (MRI) of Swain's lumbar spine, which revealed disc herniation at L5-S1.

Swain was referred to Dr. Thomas O'Hara, who performed microdiscectomy surgery to repair the herniated disc in January 2002. In a February followup visit, an MRI showed no displacement of the left S1 nerve root, and Dr. O'Hara prescribed physical therapy and advised Swain to resume normal activities if he was doing well.

Following the expiration of his insured status, Swain visited a number of physicians. On April 2, 2002, he saw Dr. Brian Hoeflinger, complaining of continued left leg pain and additional pain in his right leg. Swain refused an epidural steroid injection. He returned to Dr. Hoeflinger on May 14, 2002, and reported that his left leg pain had improved, but that he continued to have significant pain in his right leg. In June and July 2002, Swain saw two different pain specialists, Dr. Ashok Salvi and Dr. James Bassett, Jr., for continued pain in his right leg, back, buttocks, and hip. However, he refused recommended injections for his pain and reported that he was taking no medicines.

In October 2002, Swain saw a neurologist, Dr. Duane Gainsburg. Swain reported that he was pain-free for a week after back surgery, but he had subsequently redeveloped low back pain and right leg pain, with pain again spreading to his left side. Dr. Gainsburg diagnosed Swain as having chronic lumbosacral sprain syndrome interacting with depression. Dr. Gainsburg also ordered another MRI, which showed expected postoperative changes. At a November appointment, Swain reported that the medicines he was taking were "significantly beneficial" for his pain and mood.

Swain also began to receive treatment from Dr. John Pierce, a family practitioner, in November 2002.

Drs. Pierce and Gainsburg both completed residual functional capacity analyses of Swain in early 2003. Dr. Gainsburg found that Swain could sit for up to one hour at a time and for four hours per day, stand for fifteen minutes at a time, walk for thirty minutes at a time, and stand and walk for two hours per day. His assessment stated that Swain could lift one to two pounds frequently and five pounds occasionally, but not more than five pounds. Dr. Gainsburg also wrote that Swain had severe fatigue, could not perform repetitive pushing and pulling of arm controls, could not perform fine manipulation, and was sometimes unable to grip things and dropped them. Dr. Pierce's assessment found that Swain was able to stand and sit for no more than thirty minutes, and lift up to ten to fifteen pounds, but was unable to grasp if it was associated with pulling or pushing.

Swain's medical records were reviewed for the Social Security Administration in December 2002 by Dr. Maria Congbalay and in May 2003 by Dr. Paul Morton. Drs. Congbalay and Morton perceived Swain to have greater residual functional capacity than either Drs. Pierce or Gainsburg. Dr. Congbalay found that Swain could occasionally lift 20 pounds and frequently lift ten; stand, walk and sit up to six hours per day; and had no push/pull or manipulative limitations. Dr. Morton reported similar, but slightly more restrictive limitations, finding that Swain could occasionally lift 20 pounds and frequently lift ten; walk up to two hours per day and stand up to four; sit about six hours a day; and had no manipulative limitations.[2]

---

[2]Dr. Morton did not indicate whether Swain had push/pull limitations.

Swain filed an application for disability insurance benefits on September 30, 2002. His claim was denied, as was his request for reconsideration. Swain requested a hearing, which was held before an ALJ on November 4, 2004. At the hearing, Swain and vocational expert Chris Young testified. The ALJ issued a decision on February 16, 2005, denying Swain's application for benefits. Swain appealed to the district court and, pursuant to a joint stipulation, the matter was remanded to the Agency for a new hearing, with instructions that the ALJ expressly articulate the weight given to the opinions of Drs. Pierce and Gainsbourg. The ALJ held a second hearing on June 22, at which Swain, his wife, and vocational expert Joseph Thompson testified. The testimony and exhibits from the prior hearing were also incorporated into the record.

Swain testified that he had been unable to work since his back injury in August 2000 and that he did not seek medical attention until December 2001 because he was uninsured and could not afford to do so. He stated that his injury had worsened after Dr. O'Hara performed surgery and that he was in constant pain that was not alleviated by medication.

At the 2004 hearing, the ALJ asked vocational expert Young to evaluate the ability to work of a hypothetical individual with Swain's prior experience,[3] who could perform light work with the following additional limitations: no climbing of ladders, ropes, or scaffolds; no working around unprotected heights; no squatting, stooping, or crawling. The hypothetical also assumed that the individual would have to have a sit/stand option and could sit or stand for up to thirty minutes at a time. Young stated that the individual could not perform any of Swain's past relevant work, but

---

[3]Swain has past relevant work experience as an auto and truck mechanic, security guard, and woodworker.

could perform a number of unskilled jobs available in the local and national economies, including electronics assembler, mail clerk, and electronics inspector. At the 2007 hearing, vocational expert Thompson was questioned by Swain's attorney. Thompson testified that an individual who could only sit, stand, and walk a total of one and three-quarter hours in an eight-hour day could not do any job.

In a decision dated August 10, 2007, the ALJ found that Swain was not disabled through March 31, 2002, when his insured status expired, and was therefore ineligible for benefits pursuant to 42 U.S.C. §§ 423(a)(1)(D); 423(d)(1)(A). The ALJ followed the sequential five-step analysis detailed in 20 C.F.R. § 404.1520. The ALJ found that Swain's degenerative disc disease was a severe impediment that left him unable to perform past relevant work. The ALJ found, however, that Swain was still capable of performing unskilled light work with the limitations included in the hypothetical posed to the vocational expert at the 2004 hearing. The ALJ concluded that Swain could perform work available in significant numbers in the national economy and was not disabled for the purposes of the Social Security Act.

In reaching this decision, the ALJ determined that Swain was "not entirely credible." The ALJ also found that the opinions of Drs. Pierce and Gainsburg were entitled to less weight because they did not see Swain prior to the expiration of his insured status and because they relied on Swain's unreliable, subjective accounts of his medical history. After the Appeals Council denied review, Swain sought judicial review in the district court. Adopting the magistrate judge's report and recommendation, the district court affirmed the ALJ's decision. Swain appeals.

**II**

This court reviews a district court's decision in a social security case de novo. *Ealy v. Comm'r of Soc. Sec.* 594 F.3d 504, 512 (6th Cir. 2010). This review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Id.* (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "The substantial-evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). However, "even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III

Swain's argument on appeal is premised almost entirely on the alleged errors committed by the magistrate judge and the district court. In particular, Swain faults the district court for failing to identify how material inconsistencies in the record were considered and resolved, as required of an adjudicator in SSR 96-8p. However, the relevant adjudicator for the purposes of SSR 96-8p is the ALJ, not the district court or the magistrate judge. Their review, like this court's, is limited to whether the record contains substantial evidence in support of the ALJ's explanation of how

inconsistencies were resolved. They are not required or permitted to conduct their own separate analysis. The district court's order properly considered the evidence in the record relevant to determining if substantial evidence supported the ALJ's decision and correctly concluded that it did.

Swain does appear to challenge, at least indirectly, the failure of the ALJ to accord significant or controlling weight to the opinions of Drs. Pierce and Gainsburg and the ALJ's finding that Swain was not entirely credible. Swain does not point to any particular error in the ALJ's decision, but rather states reasons why the ALJ should have found in his favor.[4] However, this court only determines whether the ALJ's decision is supported by substantial evidence. We find that it is.

Swain states that there are no inconsistencies in the record that warrant the ALJ's adverse credibility finding, but he fails to mention or respond to the litany of inconsistent statements and actions noted by the ALJ in its decision. Swain does not contest that he gave multiple, conflicting accounts of his treatment history, symptoms, and use of medication to various physicians. We give deference to the credibility determinations of an ALJ provided that they are supported by substantial evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (citation omitted). Swain has failed to demonstrate that the ALJ's credibility determination was not supported by substantial evidence.

Swain's claim that the opinions of Drs. Pierce and Gainsburg should have been given more weight is similarly without merit. We have held that, although a treating physician's opinion is

---

[4]Swain states that he would be entitled to disability benefits if the evidence in the case were viewed in the light most favorable to his position. Even if correct, the ALJ was not required to view the evidence in his favor, and this court is prohibited from doing so on review of a decision denying benefits.

generally given "substantial, if not controlling, deference," it is "only given such deference when supported by objective medical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (holding that the Commissioner properly rejected claimant's treating physician's opinion where the opinion was "inconsistent with the substantial evidence in the record indicating otherwise.").[5]

Here, the ALJ explained that the doctors were not treating physicians prior to the expiration of Swain's insured status. Further, the ALJ noted that their opinions were made without the benefit of Swain's complete medical records, were based on Swain's own subjective accounts, and were inconsistent with medical records generated at the relevant time. Again, Swain fails to address these issues on appeal. Rather, he states that the ALJ failed to give "good reasons" for the weight accorded to the physicians' opinions, as required by 20 C.F.R. § 404.1527(d)(2). We conclude that the ALJ gave sufficient reasons for its decision not to give controlling weight to the opinions of Drs. Pierce and Gainsburg. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-77 (6th Cir. 2007) (affirming the ALJ's decision not to give controlling weight to treating physicians where their opinions conflicted with other substantial evidence in the record and were based on the claimant's unreliable reports). Further, this court has held that a treating physician's opinion is "minimally probative" when the physician began treatment after the expiration of the claimant's insured status.

---

[5]In *Warner*, this court also noted that it was significant that the ALJ "did not reject wholesale the conclusions" of the treating physician, and incorporated some of his conclusions in formulating the hypothetical presented to the vocational expert. The ALJ in the instant case did the same, incorporating Dr. Pierce's assessment that Swain could sit/stand for thirty minutes at a time in the residual functional capacity determination and the hypothetical to vocational expert Young.

*Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Thus, the ALJ properly stated "good reasons" supported by substantial evidence to explain the weight accorded to Drs. Pierce and Gainsburg.

## IV

Swain briefly argues that the district court erred when it determined that he waived his argument concerning the ALJ's treatment of his psychological claims. In his merits brief before the district court, Swain argued only that the ALJ gave improper weight to the treating physicians' opinion, that the ALJ employed the wrong pain standard, and that the Commissioner failed to establish that Swain could perform other work in the national economy. He did not raise the psychological disability argument until his objections to the magistrate judge's report and recommendation. Even then, Swain's argument consisted only of his assertion that the issue had not been properly addressed by the ALJ or magistrate judge. The district court found that Swain failed to provide support for his claim and that the claim was waived, regardless.

The district court's assessment was correct. "[A] claim raised for the first time in objections to a magistrate judge's report is deemed waived." *See, e.g.*, *Ward v. United States*, 208 F.3d 216, 216 (6th Cir. 2000) (unpublished table decision) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996)). Further, Swain has not made any attempt at any level to develop an argument as to how the ALJ's treatment of his psychological issues was improper. The ALJ found that Swain's pain interfered with his ability to concentrate and sleep and that he therefore could not perform detailed or complex tasks. The ALJ noted, however, that there was no indication in the record that Swain

had ever been diagnosed with a mental impairment. Swain neither disputes this finding, nor advances any argument as to how the ALJ's treatment of his mental residual function was in error.

**V**

For the reasons set forth above, we **AFFIRM** the judgment of the district court.