RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0095p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

ASHETON S. MORGAN,

          *Plaintiff-Appellant*,

    *v*.

TONY TRIERWEILER, Warden; JOHN DAVIDS, Deputy
Warden; JARED BUCHIN,

          *Defendants-Appellees*.

No. 22-1786

───────────────

Appeal from the United States District Court for the Western District of Michigan at Marquette.
No. 2:19-cv-00003—Jane M. Beckering, District Judge.

Argued:  March 10, 2023

Decided and Filed:  May 5, 2023

Before:  GIBBONS, BUSH, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Daniel E. Manville, Breia Lassiter, MICHIGAN STATE UNIVERSITY COLLEGE
OF LAW, East Lansing, Michigan, for Appellant.  Gregory E. Crouch, MICHIGAN
DEPARTMENT OF ATTORNEY GENERAL, Lansing, Michigan, for Appellees.  **ON BRIEF:**
Daniel E. Manville, MICHIGAN STATE UNIVERSITY COLLEGE OF LAW, East Lansing,
Michigan, for Appellant.  Gregory E. Crouch, Jennifer A. Foster, MICHIGAN DEPARTMENT
OF ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

───────────────

## OPINION

───────────────

    JOHN K. BUSH, Circuit Judge.  Former inmate Asheton Morgan sued Michigan prison
officials for allegedly violating his free exercise rights by failing to provide him with meals

consistent with his religion. Morgan filed a grievance with the prison five days after he arrived alleging the failure to provide the proper meals. But the district court granted summary judgment to defendants based on Morgan's failure to exhaust administrative remedies pursuant to the Prison Litigation Reform Act of 1995, 110 Stat. 1321, as amended, 42 U.S.C. § 1997e *et seq.* (PLRA). The PLRA requires prisoners to follow a prison's grievance procedures before challenging prison conditions in court. The district court held that Morgan's grievance only covered the failure to provide meals up until the date of the grievance, so Morgan should have filed further grievances as to the alleged free exercise violation. But Morgan already put the prison officials on notice of unconstitutional conduct, and therefore requiring repeat grievances for the same course of conduct would exceed the requirements of the PLRA. Accordingly, we REVERSE.

I.

Morgan is a devout Muslim. Consistent with his religious beliefs, he adheres to a Halal diet, which carries certain restrictions based on the tenets of Islam.

Morgan had been approved for a religious meal accommodation in prison. But after he was transferred to the Bellamy Creek Correctional Facility (IBC) on September 13, 2016, he claims that he was not provided religious meals. In fact, IBC apparently did not have the capability to produce religious meals, so he informed "numerous staff members" that he was "improperly housed." Morgan filed a formal grievance five days after his transfer, on September 18, 2016. His grievance alleged the following:

> Informed transport officers, RN registered Nurse, C/O Dewey, Lt. Gilbert, and his superior officer that IBC does not offer my religious vegan meal. . . . PD 05.03.140 and OP 05.03.140 [citing prison policies]. On these dates I was forced by IBC staff to violate my religious guidelines by eating food provided by IBC staff that was not in accordance with Halal tenets which violates PD 05.1.140 and OP 05.01.140 and violates my constitutional right to "Freedom of Religion." And staff refused to send me to a facility that offers my diet.

R.94-5, PageID 900. The prison officials reached the merits of Morgan's grievance on October 7, 2016:

> Chaplain Thompson confirms that prisoner Morgan is approved for a religious diet. . . . The religious diet menu is not available at IBC because the facility is not a designated location for the Vegan menu designed to meet the religious dietary needs of prisoners. In accordance with PD [Policy Directive] 04.05.120, prisoner Morgan will be served meals from the same menus available to general population prisoners while housed in Administrative Segregation at IBC. SCC [Security Classification Committee] will determine prisoner Morgan's release and/or appropriate transfer from IBC's Administrative Segregation Unit with consideration for safety and security concerns.

Report and Recommendation, R.122, PageID 1492. Morgan proceeded with two more stages of appeal. His Step II appeal, dated October 17, 2016, stated, "I am still being denied my rights to practice my religion." *Id.* This appeal was denied on October 25. *Id.* And his Step III appeal, also denied, stated, "I am still being denied my rights to practice my religion. Staff refused to accomodate [sic] my dietary needs and/or transfer me to [a] facility that meets my true security placement and dietary needs." Step III Grievance Report, R.94-5, PageID 897–98.

On December 18, 2018, Morgan filed a complaint in Michigan federal court. He alleged that IBC staff "forced [him] to eat food in violation of [his] Islamic Beliefs." Complaint, R.1, PageID 9. The case was pared down to free exercise claims against prison officials. The magistrate judge recommended summary judgment for defendants on those claims based on Morgan's failure to exhaust administrative remedies. The magistrate judge read Morgan's grievance as applying only to September 13, 2016, so any conduct after that date would not be covered. According to the magistrate judge, "prison officials were not given an opportunity to address Morgan's claims" that relate to conduct after that date.

Morgan filed objections to the Report and Recommendation.[1] As relevant here, he argued that there was a single ongoing violation of his constitutional rights and that this argument had been sufficiently raised in his grievance. But the district court believed this argument was waived because, in the court's view, it had not been raised before the magistrate judge, and regardless, the district court adopted the magistrate judge's reasoning that the only conduct covered by the grievance is that on September 13, 2016. The district court reiterated

---

[1]Morgan did not object to the magistrate recommendation to grant summary judgment to defendant Trierweiler, nor did he contest the district court holding as to defendant Trierweiler in his appellate brief, Appellant's Br. at 4. Therefore, the defendants remaining in this appeal are Jared Buchin and John Davids.

that the outcome "rests not on Plaintiff's failure to support his allegations against Defendants relating to events after September 13, 2016 but on Plaintiff's failure to submit a grievance relating to these events." Opinion and Order, R.127, PageID 1536. Accordingly, the district court adopted the magistrate judge's report and recommendation as the opinion of the court. Morgan timely appealed.

## II.

We review a grant of summary judgment de novo. *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Because defendants carry the burden of proof for exhaustion, they bear an "initial summary judgment burden [that] is higher in that [they] must show that the record contains evidence satisfying [their] burden of persuasion" and "that no reasonable jury would be free to disbelieve it." *Doe v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (quoting *Surles v. Andison*, 678 F.3d 452, 455–56 (6th Cir. 2012)). Summary judgment is appropriate in this context only if "there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Id.* at 961 (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

Congress enacted the PLRA to "reduce the quantity and improve the quality of prisoner suits." *Lamb v. Kendrick*, 52 F.4th 286, 292 (6th Cir. 2022) (citations omitted). To that end, Congress decreed that "[n]o action shall be brought with respect to prison conditions under [federal law] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. The exhaustion requirement is intended "to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford v. Ngo*, 548 U.S. 75, 94–95 (2006)). The Supreme Court has held that prisoners must complete "proper exhaustion," i.e.,

must use "all steps that the [prison] holds out." *Woodford*, 548 U.S. at 90. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218 (2007).

Until 2007, the Sixth Circuit imposed "several procedural rules designed to implement this exhaustion requirement and facilitate early judicial screening" of prisoner claims. *Id.* at 202–03; *see, e.g.*, *Burton v. Jones*, 321 F.3d 569, 574–75 (6th Cir. 2003). The Supreme Court held that these rules exceed the scope of the PLRA, and that "crafting and imposing them exceeds the proper limits on the judicial role." *Jones v. Bock*, 549 U.S. at 203. For example, the Supreme Court held that the Sixth Circuit rule requiring prisoners to identify each defendant to be sued in their first grievance "lack[ed] a textual basis in the PLRA." *Id.* at 217. The emphasis, then, is on the grievance procedures themselves under "usual procedural practice" and "normal pleading rules." *Id.* at 214, 218; *Lamb*, 52 F.4th at 292. In addition, only remedies that are "available," 42 U.S.C. § 1997e, must be exhausted. A grievance process is not considered available where officers are "unable or consistently unwilling" to provide relief, a process is "so opaque" as to be "incapable of use," or prison employees "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

III.

The magistrate judge recommended the district court hold that Morgan had exhausted administrative remedies only for violations pre-dating the grievance, not for any later conduct. Because Morgan did not file a grievance for conduct after September 13, 2016, the magistrate judge reasoned, "prison officials were not given an opportunity to address Morgan's claims that actions by the SCC and the Warden after September 13, 2016 violated his rights under the First Amendment." Report and Recommendation, R.122, PageID 1481–82. To tackle this problem, Morgan argues that the conduct was one continuing violation such that only a single grievance was needed. But defendants argue that Morgan did not raise the continuing-violation issue until after the magistrate judge issued a Report and Recommendation for this case (though before the district court opinion). Appellee's Br. at 3. We must decide whether Morgan waived the continuing-violation argument.

To hear an issue on appeal, we consider "whether the issue was properly raised before the district court." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). Courts have generally held that raising an issue for the first time in a motion to alter or amend a judgment, or in a petition for reconsideration, is too late. *Thurman v. Yellow Freight Sys.*, 97 F.3d 833, 835 (6th Cir. 1996); *Everly v. Everly*, 958 F.3d 442, 449 (6th Cir. 2020). This rule facilitates appellate review by having a district court review the issue, and it prevents litigation surprises from appearing on appeal. *Scottsdale*, 513 F.3d at 552. With regard to review of magistrate reports, Congress has ordained that

> any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636. Therefore, a district court must conduct a fresh review of an issue subject to an objection.

Although district courts must engage anew with issues raised after the magistrate judge's Report and Recommendation, the Sixth Circuit has generally articulated that "issues raised for [the] first time in objections to [a] magistrate judge's report and recommendation are deemed waived." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996)); *Swain v. Comm'r of Soc. Sec'y*, 379 F. App'x 512, 517–18 (6th Cir. 2010); *but see Lexicon, Inc. v. Safeco Ins. Co. of Am.*, 436 F.3d 662, 670 n.6 (6th Cir. 2006) (concluding issue first raised in defendant's response to plaintiff's reply brief was not waived); Kevin Koller, *Deciphering De Novo Determinations: Must District Courts Review Objections Not Raised Before a Magistrate Judge?*, 111 COLUM. L. REV. 1557, 1557 (2011) (describing circuit split over whether district judges can, cannot, or must consider new arguments not raised before a magistrate judge).

With this legal context in mind, defendants argue that Morgan raised the continuing-violation doctrine late; in their words, he "presented the district court judge with new case law

and his new argument about . . . why, he believes, he should not have been required to file another grievance." Appellees' Br. at 15–16.

Morgan counters that his grievance covers subsequent violations because it invokes an "ongoing" harm. Appellant's Br. at 13–14. He adds that defendants never argued in their motion for summary judgment that there was any delineation between Morgan's claims before and after the grievance. Reply Br. at 3. He contends, therefore, that raising the continuing violation doctrine would not have been useful to address defendants' arguments, which centered on which staff were identified in the grievance. *Id.*

It is worth noting in the first instance that the facts of Morgan's allegations are fairly consistent over time. While district court consideration helps prevent surprise arguments and facilitate appellate review, Morgan is not raising substantively new claims. Rather, his grievances and complaint reflect an attempt to resolve a single course of unconstitutional conduct. His Step I Grievance Report, dated 9/18/16, lists an incident date *range* of 9/13-18, rather than a single date. The grievance frames the violation as continuous: it states that "IBC does not offer my religious vegan meal" and that he was "forced by IBC staff to violate my religious guidelines . . . which violates PD 0.1.140 and OP 05.01.140 and violates my constitutional right to 'Freedom of Religion.'" R.94-5, PageID 900. He adds that "staff refused to send me to a facility that offers my diet." *Id.* Morgan's Step II appeal, filed a month later, states, "I am still being denied my rights to practice my religion." *Id.*, PageID 898. And his Step III appeal states, "I am still being denied my rights to practice my religion. Staff refused to accomodate [sic] my dietary needs and/or transfer me to [a] facility that meets my true security placement and dietary needs." *Id.* And Morgan's complaint references denial of religious meals past September 18, the "unavailability" of religious meals, and continued discussions with the prison administration to be treated according to his religious accommodation. That Morgan has insisted on the existence of an ongoing violation suggests he has already raised the continuing-violation argument. Indeed, it is hard to see how Morgan could be causing a litigation surprise if he has stated from his very first grievance that he is being denied accommodating meals. Morgan's clear allegations of a continuing violation are enough to resolve this issue.

As with two sides of the same coin, one could see the continuing-violation doctrine as a substantive legal doctrine that should be invoked by name. But our case law doesn't require any particular terminology, and the statements made by Morgan in his prison grievance are sufficient enough to allege a continuing violation. The import of his statements is that he is complaining not just about *one* non-Halal meal. Rather, his complaint is the meals were *continuously* not Halal. That is the more natural reading of what Morgan wrote, and we decline to adopt a narrow interpretation that, contrary to Supreme Court precedent, would create burdens on prisoner litigation beyond those contained in the PLRA. *Jones v. Bock*, 549 U.S. at 217.

Cases in which waiver has been found are of little help to defendants. *Scottsdale* concerned the failure to raise an argument before the district court as opposed to a magistrate judge (which leads to waiver except in certain exceptional circumstances). 513 F.3d at 552. As to failing to make an argument before the magistrate, in *Waters*, a criminal defendant belatedly asserted that the magistrate judge lacked the statutory authority to conduct a particular hearing. 158 F.3d at 936. This was a much more novel and disruptive argument than the one at issue here. And *Murr*, which noted waiver only in a footnote, involved a new argument that the trial was fundamentally unfair due to the district court's refusal to sever the co-defendant's case. 200 F.3d at 902. Raising a novel argument before the district court judge is distinguishable from making an argument without invoking the words "continuing violation."

And practically speaking, as Morgan notes, defendants did not raise the time issue in their brief supporting summary judgment. The magistrate judge raised it sua sponte, noting that the analysis after September 13 "becomes more complicated" because "Morgan did not file any other grievances with respect to the conditions of his imprisonment at IBC after September 13." Report and Recommendation, R.122, PageID 1481–82. The first chance that Morgan had to respond to this issue was in his objection to the Report and Recommendation.

Ultimately, the allegation of a continuing violation was inherent in the grievances and the complaint, and any question as to whether the meals were discrete matters each requiring a grievance was addressed by Morgan at the earliest instance after it was raised. The exhaustion issue is also a legal one that is fully briefed before the court now. Accordingly, we address it.

IV.

With the waiver issue resolved, we examine whether Morgan has exhausted administrative remedies as required by the PLRA.

A.  Continuing Violation

Given that Morgan filed a single grievance on September 18, 2016, for conduct between September 13 and 18,[2] there arises the question of whether a new grievance is needed for later conduct.  In other words, did Morgan exhaust his administrative remedies for conduct post-dating the grievance?

That question depends on the applicability of the continuing-violation doctrine.  This doctrine was first recognized by the Supreme Court in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).  *Havens* involved a Fair Housing Act challenge in which the Court considered whether conduct outside the statute of limitations period was actionable.  *Id.* at 380.  Reasoning that statutes of limitations exist to "keep stale claims out of the courts," the Court noted that the "staleness concern disappears" when the challenged violation is continuing.  *Id.*  The Court also cautioned against a "wooden" application of the Fair Housing Act.  *Id.*  Ultimately it held that for conduct "that continues into the limitations period," the complaint is timely if filed within 180 days of the last asserted occurrence.  *Id.* at 380–81.

The PLRA context bears some similarities.  Where there is "one, continuing harm" or a single course of conduct (which can lead to discrete incidents of harm), filing repeat grievances is unnecessary.  *Siggers v. Campbell*, 652 F.3d 681, 692–93 (6th Cir. 2011); *Johnson v. Johnson*, 385 F.3d 503, 520–21 (5th Cir. 2004); *Adams v. Dobias*, No. 1:19-cv-142, 2019 U.S. Dist. LEXIS 214364, at *8 (W.D. Mich. Oct. 11, 2019) (quoting *Siggers*, 652 F.3d at 692); *Hoosier v. Liu*, No. 2:16-10688, 2017 U.S. Dist. LEXIS 216534, at *15 (E.D. Mich. Oct. 30, 2017) (quoting *McAdory v. Engelsgjerd*, No. 5:07-CV-13192, 2010 U.S. Dist. LEXIS 27372, 2010 WL 1131484, at *4 (E.D. Mich. Feb. 11, 2010)) ("[I]n cases involving a failure to treat . . . a chronic condition, the courts have held that prison officials may not parse for timeliness each individual

---

[2]As noted, the magistrate judge read the grievance as applying to only September 13, and so any conduct after that date would not be covered by the grievance.  The district court adopted this reasoning.

treatment decision."); *cf. Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (statute-of-limitations context). For example, in *Ellis v. Vadlamudi*, 568 F. Supp. 2d 778 (E.D. Mich. 2008), the state ignored the plaintiff's ongoing medical condition that required intervention, and the court held that one notice covered all claims related to the condition. *Id.* at 783–84. And in *Johnson*, a plaintiff who suffered repeated sexual and physical assaults was not required to file new grievances after each assault because, even though each incident was discrete, the alleged harm was the failure to protect the prisoner. 385 F.3d at 520–21. That is, "the same condition of confinement of which he had been complaining continued." *Id.* at 520.

Defendants rely on *Siggers*, where we affirmed the district court's dismissal of plaintiff Siggers's claim that a prison violated his rights by rejecting some pieces of incoming and outgoing mail over an eight-month period. 652 F.3d at 684. Siggers had argued that a single grievance about a mail rejection "put the defendants on notice of a continuing violation" for other rejected mail. *Id.* at 688–89, 692. We were not persuaded by this argument. We noted that the mail was rejected for a variety of reasons under various prison policies, and therefore the grievance did not put the state on notice of other types of potential problems with the mail system:

> [T]he Notices of mail rejection that Siggers identifies are each discrete events, and each Notice involves separate facts and circumstances—and even different policy directives. Furthermore, a grievance on each would have permitted an investigation into the reasons for each rejection, based on the different contents of each rejected piece of mail.

*Id.* at 693.

Defendants' reliance on *Siggers* is misplaced. In *Siggers* the prisoner's claim was not that he had been denied mail consistently. Rather, it concerned certain pieces of mail rejected under different facts and policies; therefore, a separate grievance for each piece was required. *Id.* Here, by contrast, Morgan's grievance is that he was denied Halal food *continuously*, not just at particular meals, in violation of his free exercise rights. His Step II appeal echoes the continuing nature of the harm: "I am still being denied my rights to practice my religion." R.94-5, PageID 898. If one grievance is not enough, it is difficult to see how often grievances would need to be filed for this type of violation. Defendants offer no limiting principle, instead framing the

violations as "discrete events."  Appellees' Br. at 19 (quoting *Siggers*, 652 F.3d at 693).  Raising the issue after every meal—or even every two to seven days[3]—would be an unwarranted expectation given that the allegations were broader than a single meal.  Like in *Johnson,* the "same condition of confinement" led to an ongoing harm, even if the condition was only present at mealtime.  385 F.3d at 520.  Moreover, filing a grievance at IBC requires a prisoner to attempt initial oral resolution of the problem, yet it is unclear what Morgan could add in these oral discussions that would not be covered in the grievance process that Morgan pursued.

Defendants seem to imply that, based on Morgan's extra allegations, including staff "laughing at him" and refusing religious meals as "punishment," his complaint is "not simply" about meals.  *Id.* at 19.  But 42 U.S.C. § 1997e requires exhaustion before bringing an "action." At issue here is Morgan's free exercise claim, which he raised by prison grievance.  The facts Morgan has pled along with this claim, including staff laughing at him, are sufficiently ancillary to require no further exhaustion of his claim.   Therefore, Morgan's grievance exhausts administrative remedies for the denial of religious meals and related conduct beyond September 13, 2016.

B.  Applicability of Grievance to Specific Defendants

Finally, there is another issue discussed by the magistrate judge and addressed on appeal by Morgan.  The grievance policy covering IBC states, "Dates, times, places, and names of all those involved in the issue being grieved are to be included."  Prisoner/Parolee Grievances, R.109-6, PageID 1289.  The question is whether Morgan has exhausted claims against the specific defendants in this case.

According to the magistrate judge's finding, left undisturbed by the district court, prison staff "did not reject the grievance for failure to name specific individuals.  Therefore, broadly

---

[3]Under the grievance policy at issue, a prisoner must attempt oral resolution within two days of a grievable issue and file a written grievance within five days after that.  Therefore, assuming there is no continuing violation here, then to exhaust his claims Morgan would have to attempt oral resolution every two days and file a written grievance at least once a week (assuming violations can be bundled as one "grievable issue"—which, again, would support a continuing violation).

interpreting the Step I grievance, Morgan could sue any IBC official on the claims he exhausted in this grievance." Report and Recommendation, R.122, PageID 1481–82.

For this conclusion the magistrate judge relied on *Reed-Bey*, which describes itself as a case about exhausting particular defendants—"with a twist." 603 F.3d at 324. Specifically, the officials in that case "chose to address" the prisoner's grievance on the merits despite an apparent lack of exhaustion. *Id.* The court noted: "When the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar?" *Id.* at 325. This rule has become Sixth Circuit doctrine. *See Mattox v. Edelman*, 851 F.3d 583, 591 (6th Cir. 2017) (citing *Reed-Bey*, 603 F.3d at 325) ("[P]rison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits."); *Doe v. Snyder*, 945 F.3d 951, 962 (6th Cir. 2019) (same).

*Reed-Bey* controls the result here: because prison officials responded to Morgan's grievance on the merits, they have waived their own procedural bar. Defendants do not even attempt to contest *Reed-Bey* in their brief—probably because they know they would be swimming upstream against our court's precedents.

And even if *Reed-Bey* were not applicable, defendants make no sincere effort in their brief to assert that Morgan's grievance was deficient for failing to name the specific defendants. Rather, they write a single conclusory sentence about their lack of involvement, Appellees' Br. at 19, and only to support the lack of a continuing violation as to them. Nor do they challenge the magistrate judge's conclusion under *Reed-Bey* that Morgan's grievance exhausted remedies as to "any IBC official." Report and Recommendation, R.122, PageID 1481–82. Morgan has therefore exhausted administrative remedies against the named defendants for the time period he was confined in IBC.

## V.

In sum, we hold that the district court erroneously held that Morgan had not exhausted administrative remedies. We therefore **REVERSE** the judgment of the district court and **REMAND** for consideration consistent with this opinion.