NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0347n.06

No. 23-3684

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 08, 2024
KELLY L. STEPHENS, Clerk

SABRE ENERGY CORPORATION, )
)
Plaintiff - Appellant, )
)
v. )
)
GULFPORT ENERGY CORPORATION; ANTERO )
RESOURCES CORPORATION, )
)
Defendants - Appellees. )
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

OPINION

---

Before: SILER, COLE, and BUSH, Circuit Judges.

BUSH, J., delivered the opinion of the court in which SILER, J,. joined. COLE, J. (pp. 9–12), delivered a separate dissenting opinion.

JOHN K. BUSH, Circuit Judge. Sabre Energy Corporation sued Defendants Gulfport Energy Corporation and Antero Resources Corporation for breach of contract. Sabre Energy owns Overriding Royalty Interests ("ORRIs"), or fractional shares, in Defendants' shares of royalties from their oil and gas leases. Sabre Energy contends that these ORRIs attach to Defendants' recently developed deep horizontal wells, and so Defendants owe it royalties. Defendants maintain that Sabre Energy is only entitled to royalties from oil and gas produced by vertical shallow wells that existed at the time Sabre Energy acquired the ORRIs. The district court granted summary judgment for Defendants. Because Sabre Energy has no interest in the oil and gas produced from Defendants' deep horizontal wells, we affirm.

**I**

**A. Factual Background**

In 1993, Sabre Energy obtained its ORRIs through two assignments ("Assignments") from Defendants' predecessor in interest, Transatlantic Energy Company. Each Assignment includes an attachment, "Exhibit A," that lists a combined total of 25 wells and identifies the overriding royalty percentage, drilling permit number, and location of each well. At the bottom of each "Exhibit A," a "Note" provides the following:

> THIS ASSIGNMENT OF OVERRIDING ROYALTY INTEREST PERTAINS TO THE AFORMENTIONED WELLS AND THE DRILLING UNITS ASSOCIATED THEREWITH AND DOES NOT EXTEND TO THE UNDRILLED ACREAGE ASSOCIATED WITH THE LEASE REFERENCED AND/OR POOLING AGREEMENT.

The 25 wells listed are "vertical shallow wells" that produce oil and gas at depths of 2,500 to 5,500 feet. Following advancements in the oil and gas industry, and almost 20 years after the Assignments were executed, Defendants began drilling "horizontal deep wells" to produce oil and gas from the Utica Shale/Point Pleasant formation. Unlike vertical shallow wells, horizontal deep wells require drillers to lay pipe horizontally, through which the surrounding shale can be hydraulically fractured and oil or natural gas can be removed. These horizontal wells are usually deeper than vertical wells, and the typical depth of a fracking production in the Utica Shale/Point Pleasant formation ranges from 5,000 to deeper than 10,000 feet. Several of Defendants' horizontal wells "produce from underneath the vertical shallow wells and drilling units on which Sabre Energy has ORRIs."

Believing that its ORRIs granted them royalties from the oil and gas captured by not only the shallow vertical wells, but also any deeper horizontal wells, Sabre Energy demanded royalty

payments from Defendants.  Defendants refused, stating that the "assignment did not assign any rights to the Utica formation."

## B. Procedural Background

Sabre Energy sued, seeking unpaid royalties, a detailed accounting of Defendants' oil and gas production and royalty calculations, and a declaratory judgment that the disputed wells fell within Sabre Energy's ORRIs.  The district court later dismissed Sabre Energy's claim for accounting, finding that the Complaint did not sufficiently allege the required elements.  Ultimately, the parties cross-moved for summary judgment, which the district court granted in Defendants' favor.

The district court held that a "drilling unit" is a concept "created by Ohio law to require that wells meet certain spacing requirements," and that some of Sabre Energy's interests were already depth-limited.  The district court also held that "undrilled acreage," when used in the context of oil and gas, encompasses subsurface as well as surface acreage.  Because the Assignments exclude Sabre Energy's interests from extending to undrilled acreage, its remaining interests could not extend to the deeper Utica Shale/Point Pleasant Formation.  The district court concluded that, because the Assignment expressly excluded undrilled acreage from Sabre Energy's ORRIs, Sabre Energy lacked an interest in Defendants' deep horizontal wells.  Sabre Energy timely appealed.

## II

This court reviews a district court's grant of summary judgment de novo.  *See Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023).  Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Because the parties do not dispute the material facts, this appeal is limited

to the interpretation of the Assignments. We agree with the parties that Ohio law applies to this diversity action. *See Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Cap., Inc.,* 274 F.3d 1085, 1092 (6th Cir. 2001).

Under Ohio law, "[w]hen confronted with an issue of contract interpretation, [a court's] role is to give effect to the intent of the parties." *Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292 (Ohio 2011). A court should "presume" that the parties' intent is "reflected in the language of the contract." *Id.*

"When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties." *Id.* Yet "'parol evidence . . . is always admissible to define and explain the meaning of words or phrases in a written instrument which are technical or where a word or phrase is used in a peculiar sense that is applicable to a particular industry or trade.'" *Career & Tech. Ass'n v. Auburn Vocational Sch. Dist. Bd. of Educ.*, No. 2013–L–010, 2014 WL 1478838, at *5 (Ohio Ct. App. April 14, 2014) (quoting *Mfg. Mgmt. Sys. v. Data Solutions, Inc.,* No. 11-074/76, 1987 WL 8229, at *3 (Ohio Ct. App. Mar. 20, 1987)).

The district court did not err in concluding that the term "drilling unit" as used in the Assignments restricted Sabre Energy's interest to a depth of 4,000 feet. Although the Assignments do not define that term, we read the Assignments alongside state requirements in effect at the time Sabre Energy acquired its interests, absent clear indications to the contrary. *See also Eastwood Loc. Sch. Dist. Bd. of Edn. v. Eastwood Edn. Assn.*, 875 N.E.2d 139, 143 (Ohio 2007) ("Except where a contrary intent is evident, the parties to a contract are deemed to have contracted with reference to existing law."). Those requirements make clear the 4,000-feet depth limit.

To explain, we note that Ohio law requires a permit for oil and gas drilling. Ohio Rev. Code § 1509.05. To obtain the drilling permit, a proposed well must have an adequate drilling

unit, defined as the minimum acreage on which wells of certain depths can be placed. *See* Ohio Admin. Code 1501:9-1-04(C); *see also* Ohio Rev. Code 1509.01(G) (later codifying this definition).[1] A drilling unit is considered adequate if there is sufficient surface acreage for the well's proposed depth. Ohio Admin. Code 1501:9-1-04(C).

When Sabre Energy acquired its interests in the wells, Ohio law provided that a well placed on a drilling unit smaller than 40 acres could not drill below 4,000 feet, whereas a drilling unit larger than 40 acres could have a proposed well deeper than 4,000 feet. Ohio Admin. Code 1501:9-1-04(C) (effective 1983). Thus, Sabre Energy's ORRIs in drilling units smaller than 40 acres do not attach to the Utica Shale/Point Pleasant formation, but the ORRIs in drilling units larger than 40 acres do.[2]

The district court also did not err by concluding that the undrilled acreage exception bars the ORRIs from attaching to the Utica Shale/Point Pleasant formation. While it is generally true that an interest in oil and gas extends to the core of the Earth, it will not if the assignment of the interest includes limiting language. *See K & D Farms, Ltd v. Enervest Operating, L.L.C.*, No. 2015CA00038, 2015 WL 6507785, ¶ 29 (Ohio Ct. App. Oct. 26, 2015) ("If a granting clause does not contain terms limiting the depth or formation, the rights are granted to all depths."). *But see Chance v. BP Chemicals, Inc.*, 670 N.E.2d 985, 991–92 (Ohio 1996) (casting doubt that rights are

---

[1] Sabre Energy points to *Talmage v. Bradley*, 377 F. Supp. 3d 799, 821 (S.D. Ohio 2019) to argue that the oil and gas industry uses drilling units as shorthand for surface acreage, not depth limitations. But, notwithstanding that *Talmadge* does not bind us, the assignment contracts there limited royalty interests to "well sites," which the contracts themselves defined. *Id.* at 822. Here, however, the Assignments do not define the technical term "drilling units."

[2] The dissent argues that the phrase "drilling unit" does not contain any depth limitation, but only delineates a width and length on the surface. But, as an Ohio court recently explained in a similar case, because the "20 acre drill site unit contained a 4,000-foot depth limitation based on the Ohio Administrative Code" the language of the Assignment was "unambiguous" and did not convey rights below 4,000 feet. *Hogue v. PP&G Oil Co.,* Nos. 23 MO 0021 & 23 MO 0023, 2024 WL 3634236, at ⁋ 61 (Ohio Ct. App. Aug. 1, 2024) (internal quotation marks omitted).

granted to all depths). The Assignments limit Sabre Energy's interests to the aforementioned "drilling units," and expressly do not convey interests in "undrilled acreage associated with the lease referenced." As the district court noted, "[d]epth is an inherent consideration in oil and gas leases." This undrilled acreage exception applies not only to the surface acreage, but also subsurface.[3]

Sabre Energy argues that the phrase "undrilled acreage" is often seen in oil and gas leases, where a "lessee is required to release acreage that is not developed . . . pursuant to a Pugh Clause." A Pugh Clause protects lessors when only a small part of a large tract of leased land is being used for oil and gas production; the clause will sever the non-producing land and will maintain the lease as to the "lease acreage actually producing." *Summitcrest, Inc. v. Eric Petroleum Corp*. 60 N.E.3d 807, 815 (Ohio Ct. App. 2016). Sabre Energy contends that Pugh clauses that are "silent as to geological strata" only divide "surface acreage, not geological formations." To support this argument, Sabre Energy primarily relies on a single case, which reverted "undrilled acreage" pursuant to a Pugh clause. *Neuhart v. TransAtlantic Energy Corp.,* 121 N.E.3d 802, 813 (Ohio Ct. App. 2018). But *Neuhart* alone does not established that "undrilled acreage" is a common phrase in the oil and gas industry with a fixed meaning, especially given its imperfect fit here: *Neuhart* does not address whether the term "undrilled acreage" applies to only surface area or both surface

---

[3] The dissent argues that we incorrectly attribute a third dimension to the word "acreage." The dissent then argues that a two-dimensional understanding of acreage inherently extends rights to all depths, unless otherwise limited. These two statements, however, are in conflict. The dissent itself recognizes that acreage includes a third dimension unless the conveyance includes a depth limitation. But, unlike the dissent, we do not read "acreage" as the limiting term; instead, in the oil and gas context, acreage necessarily requires consideration of three-dimensional space. *See K & D Farms, Ltd,* 2015 WL 6507785, ¶ 29 (stating that, because the lease contract "does not contain terms limiting the depth or formation," the subsurface rights attached to the "acreage" "are granted to all depths").

and subsurface, and also interprets a Pugh clause in the context of a lease, whereas the Assignments lack a Pugh clause.[4]

Sabre Energy argues that that it should have been afforded discovery, rather than the district court relying on parol evidence to interpret the Assignments, because it was "the intent of the parties to proceed with discovery if the district court decided the ORRIs were ambiguous." But courts may give technical terms their technical meaning, without determining that the term is ambiguous. *Career & Tech. Ass'n.,* 2014 WL 1478838, at \*5. As just explained, even if these terms were ambiguous, Ohio law permits courts to look to extrinsic evidence to resolve that ambiguity. *Maverick Oil & Gas, Inc. v. Barberton City Sch. Dist. Bd. of Educ.*, 872 N.E.2d 322, 328 (Ohio Ct. App. April 11, 2007). The parties jointly moved to stay discovery, explaining that discovery may be unnecessary because the district court's "ruling on the issues of lease interpretation . . . may be dispositive of all claims . . . or lead to early resolution of the remaining issues." And, by moving for summary judgment, Sabre Energy itself inherently contended that no genuine fact disputes existed. *See Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (the moving party bears the initial responsibility of demonstrating that there are no "genuine issues of material facts, which it may accomplish by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." (internal quotation marks and citation omitted)). By its own admissions, Sabre Energy knew the potential consequences of staying discovery and moving for summary judgment.

---

[4] Similarly, Sabre Energy's reference to *Friedrich v. Amoco Production Co.*—an out-of-state intermediate appellate court case which held that a Pugh clause silent on geological strata only divided the lease based on the surface—does not alter our view, because the Assignments lack a Pugh clause. 698 S.W.2d 748 (Tex. Ct. App. 1985).

**III**

Because the Assignments' language limits the scope of Sabre Energy's ORRIs, and thus does not convey to Sabre Energy a royalty interest in Defendants' deep horizontal wells, we affirm.

COLE, Circuit Judge, dissenting. This case turns on whether the term "acreage" contains a depth limitation. Because "acreage" is a two-dimensional term that says nothing of depth, I would reverse the district court's grant of summary judgment to Gulfport and Antero and grant summary judgment to Sabre Energy.

Under Ohio law, an interest in oil and gas extends to the core of the Earth unless the granting clause specifies a depth limitation. *K & D Farms, Ltd v. Enervest Operating, L.L.C.*, No. 2015CA00038, 2015 WL 6507785, ¶ 29 (Ohio Ct. App. Oct. 26, 2015). Here, because the terms "drilling unit" and "undrilled acreage" do not limit depth, Sabre Energy's rights extend to the defendants' deep, horizontal wells.

*Drilling unit*. "Drilling unit" is defined in terms of "acreage" under Ohio law. Ohio Rev. Code 1509.01(G). Specifically, "'[d]rilling unit' means the minimum acreage on which one well may be drilled." *Id*. The dictionary definition of "acreage" is "area in acres." (Op., R. 96, PageID 2155.) Area is two-dimensional. VOCABULARY.COM, http://vocabulary.com/dictionary (last visited Aug. 1, 2024). An acre is a two-dimensional unit of measurement equal to 43,460 square feet. *Id.* As a two-dimensional term, "acreage" delineates width and length, but not depth. *Id*.

As noted by the district court, at the time of contracting, Ohio well-spacing regulations generally did not allow drilling below 4,000 feet on drilling units smaller than 40 acres. (Maj. Op. 5 (citing Ohio Admin. Code 1501:9-1-04(C) (effective 1983)).) That these regulations restricted the depth of drilling permitted *within* certain drilling units does not change a drilling unit's boundaries or the meaning of "drilling unit." As discussed above, a "drilling unit" is defined in acres, which are delineated by width and length *on the surface*. Accordingly, the term "drilling unit" does not contain a depth limitation. Therefore, without other language limiting the grant's depth, a grant of rights by "drilling unit" extends to all depths.

*Undrilled acreage.* By its terms, the grant "does not extend to the undrilled acreage" associated with the underlying leases and pooling agreements. (R. 1-1, PageID 13; R. 1-2, PageID 15.) As discussed above, "acreage" is a two-dimensional term. The majority and the district court conclude that "undrilled acreage" unambiguously refers to subsurface space *underneath* the wells and their drilling units. (Maj. Op. 6.) This interpretation incorrectly reads a third-dimensional depth component into "acreage," a two-dimensional term.

"Depth is an inherent consideration in oil and gas leases." (Maj. Op. 6 (quoting Op., R. 96, PageID 2155).) But this inherent consideration does not require us to imply a depth limitation where none is explicitly stated. Rather, this inherent consideration is why each term outlining area in acres at the surface must be interpreted to extend below to all depths unless otherwise specifically limited. *See K & D Farms, Ltd*, 2015 WL 6507785, ¶ 29.

***

Essentially, Ohio law mandates that the granting clause be read as follows: "The assignment of overriding royalty interest pertains to the aforementioned wells and the drilling units associated therewith [to all depths below unless specifically limited here] and does not extend to the undrilled acreage [to all depths below unless specifically limited here]." *See id.*; (R. 1-1, PageId 13; R. 1-2, PageID 15). Because there are no depth-limiting terms, the unambiguous language here divides the rights to all depths below by delineating boundaries at the surface.

A brief look at the plats for the associated leases and pooling agreements confirms this interpretation. The granting clause refers to (1) wells, (2) drilling units, and (3) undrilled acreage. (R. 1-1, PageId 13; R. 1-2, PageID 15.) As shown below, each plat contains (1) a well (below marked with a circle labeled "Well No. 2"), (2) a drilling unit (marked with dashed lines labeled

"unit line"), and (3) land outside the drilling units and the wells, i.e. "undrilled acreage." (*E.g.*, R. 67-1, PageID 1279.)



(*Id*. (the total acreage is 471 and the drilling unit's acreage is 20, leaving approximately 451 undrilled acres) (highlights in original).)

Here, because the clear, unambiguous language of the granting clause does not have a depth limitation, Sabre Energy has an interest in the defendants' deep, horizontal wells.  For the foregoing reasons, I respectfully dissent.